FIDELITY TRUST COMPANY, executor, &c., respondent,

*v.*

NEWARK MILK AND CREAM COMPANY et al., appellants.

[Submitted March 25th, 1918. Decided May 3d, 1918.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens, who filed the following opinion:

This is a suit to compel the defendant company to transfer on its books a share of its stock to complainant. The defendant Rutz asserts title to the same share and asks similar relief.

The complainant is the executor of William H. Bennett, who died in November, 1913. Bennett had been for many years general manager of the defendant the Newark Milk and Cream Company. In 1904 he was the owner of one hundred and twenty-five shares of its stock. This was half of its total issue of two hundred and fifty shares. The defendant Stanley A. Rutz had, in 1899, become its bookkeeper. In 1904 he says that he wanted to resign from the company. He did not. On the contrary, he was elected a director and vice president, and served as assistant manager at an increased compensation. He continued in these positions until Mr. Bennett's death, in 1913, when he became secretary and treasurer. In his answer and counter-claim, he says that prior to the month of May, 1904, he had rendered service to Bennett, in connection with Bennett's personal affairs, for which he had received no compensation; that in May, 1904, he informed Bennett that unless he could then acquire at least one share of the capital stock of the company as his own property and become an officer thereof, he would sever his connection with it; that thereupon Bennett stated to him that it was his desire that he, Rutz, should remain in the company's employ, and that if he would do so,

*89 N. J. Eq.*    Fidelity Tr. Co. *v.* Newark Milk & Cream Co.

"and in consideration of the service theretofore rendered by him to Bennett in his personal matters, he would transfer to him one share of stock from his own holdings, which share would thereupon become and thereafter be his own property; that if this was done, he (Bennett) desired to retain the certificate for such share and to receive and retain the dividends thereon during his lifetime, but that after Bennett's death, he (Rutz) should have the certificate and be entitled to have it transferred to him of record."

This alleged agreement was not reduced to writing. As the controversy is between an executor, in his representative character, on the one side, and Rutz on the other, the latter was' unable to give evidence of what occurred, and the alleged agreement has not been proved, at least directly.

The question is, has it been proved circumstantially. The proof relied upon is the following: In 1904, and the years following, Rutz, at the stockholders' annual meetings, voted as the owner of one share. He was elected and re-elected a director and vice president at meetings which Bennett as secretary recorded. In a certificate of change of name filed with the secretary of state in April, 1912, Bennett is represented as the owner of one hundred and twenty-four shares and Rutz as the owner of one. In a report filed with the secretary of state in June, 1913, Rutz is stated to be a director and vice president. In the year 1913, the defendant company employed the New Jersey Registration and Trust Company to act as its registering agent. When the stock certificate book was being turned over, it appeared that stub No. 9, corresponding to the stock certificate in controversy, had not been filled in and the registration company's agent called Mr. Bennett's attention to the omission. After considerable questioning and cross-questioning on the subject, the agent testified as follows: "*Q.* Did you ask him who was the *record* owner and he answered that Stanley A. Rutz was the owner and the number of shares is one. *A.* That is right."

Then the agent filled in the stub with the name "Stanley A. Rutz." This was nine years after the alleged agreement was made and in the same year that Bennett died.

This evidence shows that Bennett permitted Rutz to hold himself out to the world as the owner of a share and that Bennett

15

admitted on one occasion that Rutz was the owner of the share in question. It does not show how Rutz became owner; it does not show the terms of the agreement under which he became owner and it does not show the consideration, if any.

On the facts proved we might conjecture either that Rutz was a "dummy" director or that he had the promise of a share by way of gift, or that there was an agreement to give him a share based on valuable consideration. It will be noted that the proof fails to show that there was any actual transfer of any share or that Rutz ever received any dividend, although the company was paying dividends.

The evidence on the part of the complainant is as follows: Bennett was the owner of one hundred and twenty-five shares long prior to 1904. A certificate for one of these shares was made out in the name of Bennett's son Robert, who, at the time it was issued, assigned it, by formal words endorsed on the back of the certificate, to his father, who thereafter and up to the time of his death, held it unassigned and received and appropriated the dividends. Robert testifies that about the year 1906, when he saw Rutz sign his name as vice president, he asked him if he was vice president and a stockholder, and he said "No;" that he was only a dummy stockholder. This conversation Rutz denies.

It is well settled that as between the transferrer (Robert) and the transferee (William) title to the stock certificate was completely vested without transfer on the books. *Matthews* v. *Hoagland, 48 N. J. Eq. 486; Farrell* v. *Passaic Water Co., 82 N. J. Eq. 97.* The burden of proof is on Rutz. Bennett was, unquestionably, up to his death the legal owner. As between the complainant executor and the company, the former has the right to insist that a certificate be issued to it. *Farrell* v. *Passaic Water Co., supra.* Being thus the owner, it is for Rutz to show that Bennett made a contract founded on valuable consideration, to transfer the share to him. Uncertainty in the contract is fatal to a claim for specific performance. *Myers* v. *Metzger, 63 N. J. Eq. 780; Potter* v. *Hollister, 45 N. J. Eq. 508; 46 N. J. Eq. 609.*

The question, therefore, is, has a contract to transfer, certain in all its parts, been shown? It seems to me that it has not. The court is asked to infer such a contract from three circumstances. First, that prior to 1904, Rutz had collected rents for Bennett personally. There is nothing in the evidence to connect the obligation, if any, to pay for the collection of these rents with any agreement to transfer. Second, that Bennett would not have permitted Rutz to vote as a stockholder, or act as a director, unless he really was a stockholder. But Rutz was not, on his own proofs, entitled to vote as a stockholder, although he did vote. His position was that of a man to whom stock had been promised but not transferred. A stockholder is not entitled to vote unless he be an original subscriber, or unless he be registered on the company's books. *Johnston* v. *Jones, 23 N. J. Eq. 216; In re Election of Directors, 61 N. J. Law 422; Chapman* v. *Bates, 61 N. J. Eq. 667.* And no person can be elected a director unless he be at the time of his election a *bona fide* holder of some stock. Section 39 Corporation act. Are we at liberty to infer a contract, complete in all its parts, from an irregular act? Third, that Bennett admitted to Picking, the registrar, that Rutz was the *record* owner of the share in controversy. He was, admittedly, *not* the record owner. But aside from this the admission does not show in what way he became so. His claim is consistent with any one of the three suppositions that I have mentioned. If either of the first two were made, the contract could not be enforced; for, of course, there would be none to enforce, if, as suggested by Robert Bennett's testimony, Rutz were only a dummy director; and nothing is better settled than that equity will not direct the specific performance of a promise to make a gift, or to perfect an imperfect gift. From what fact are we to infer a valuable consideration? It seems strange that this consideration was not regarded as being of sufficient consequence to call for the immediate delivery of a share, whose face value was only $100, and to entitle the holder to the immediate payment of the dividends thereon.

Counsel suggests that Mr. Rutz's agreement to remain with the company was a consideration. The difficulty with this is that

it is not proved that he did agree in consideration of the promise to transfer. All that appears is that after having made a resolution to leave—a resolution that, as far as the proofs go, was not communicated to anybody, he stayed at an increased salary—an obvious consideration, and, without legal title, acted as a stockholder.

While there must have been some arrangement between the parties, the evidence fails to disclose with certainty what it was. It cannot, therefore, under the well-settled rule be specifically performed.

*Mr. Francis Lafferty,* for the respondent.

*Messrs. Lindabury, Depue & Faulks,* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Stevens.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.