The petitioner alleges that during the year 1926 he loaned to Ralph L. Chester, Incorporated, a New Jersey corporation, the sum of $100,000, and that as security therefor assignments of various mortgages on real estate were made to him; that from time to time payments have been made until there is now due on the same the sum of $32,500, together with interest; that on or about May 17th, 1927, he entered into an agreement with the said Ralph L. Chester, Incorporated, and with Ralph L. Chester personally, that he would accept for the balance then due him, $73,500, a note signed by Ralph L. Chester, Incorporated, and endorsed by Ralph L. Chester, and as security for said note he would accept, in addition to certain mortgages held by him, the assignment of six hundred and fourteen shares of the capital stock of the Strand Properties, Incorporated, a New Jersey corporation, of the par value of $100 per share; that certificate No. 6 of the Strand Properties, Incorporated, for said six hundred and fourteen shares of stock, together with a written assignment of such shares, were delivered to him and he is now in possession thereof; that from time to time, upon payments being made to reduce said loan, said mortgages were released or reassigned and the said petitioner now holds no other security than said stock; that at the time of accepting said shares of stock as collateral he was informed that the assets of the said company consisted almost entirely of what is known as the Strand Theatre in Ocean City and that the same was encumbered only to the extent of a mortgage of $65,000.
He avers that the said Strand Properties, Incorporated, executed a mortgage to one Naomi M. Sutton to secure the payment of $37,500, and alleges that the said Strand Properties, Incorporated, received no consideration therefor; that on or about August 25th, 1927, Charlotte S. Chester, who is the wife of Ralph L. Chester, and Naomi M. Sutton and Edward M. Sutton, her husband, entered into a written agreement whereby Naomi M. Sutton and Edward M. Sutton agreed to sell and Charlotte S. Chester agreed to buy all of the shares *Page 27 
of stock of Naomi M. Sutton and Edward M. Sutton in Strand Properties, Incorporated, for the total sum of $49,860.19, of which sum $12,360.19 was paid in cash and the balance of which purchase price was to be paid by the execution and delivery by Strand Properties, Incorporated, of a mortgage for $37,500, covering the real estate owned by Strand Properties, Incorporated, consisting of the aforementioned Strand Theatre property; that the shares of stock owned by Naomi and Edward Sutton in Strand Properties, Incorporated, at the date of said agreement, totaled six hundred and twenty-five shares, of which six hundred and twenty-four shares were owned by Naomi M. Sutton and one share by Edward M. Sutton; that said agreement of August 25th, 1927, was carried out to the extent that said sum of $12,360.19 was paid by Ralph L. Chester, said $37,500 mortgage was executed and delivered by Strand Properties, Incorporated, to Naomi M. Sutton and said six hundred and twenty-five shares of stock were assigned, six hundred and twenty-four shares thereof being issued to Ralph L. Chester and one share thereof being issued to Charlotte S. Chester, and said shares are still standing in the names of said parties on the books of the Strand Properties, Incorporated; that Strand Properties, Incorporated, never received any consideration whatever for the said mortgage, it having been given solely for the stock above mentioned; that the $37,500 mortgage referred to is the second mortgage referred to in the bill of complaint, recorded in book 298, page 23.
He prays that the decree in the foreclosure proceedings be opened and that the court order and decree that the mortgage made by Strand Properties, Incorporated, to Naomi M. Sutton in the sum of $37,500 be declared null and void.
The facts as disclosed by the affidavits of defendants, in so far as this mortgage is concerned, are somewhat different from that alleged by the petitioner.
It is manifest that the Strand Properties, Incorporated, was a close corporation, all of the stock being held by Ralph L. Chester and his wife, Charlotte S. Chester, and by the late Edward M. Sutton and Naomi M. Sutton. *Page 28 
Sometime before the death of Mr. Sutton, he and his wife entered into the agreement with Mrs. Chester as above recited. The number of shares held by the Suttons at that time amounted to six hundred and twenty-four shares in the name of Naomi M. Sutton and one share in the name of Edward M. Sutton. Apparently nothing was done under this agreement except the payment, from time to time, of the amounts specified, until on or about the 12th day of September, 1928, when, at a meeting of the directors of the Strand Properties, Incorporated, Mrs. Chester presented an offer to the company as follows:
"That Charlotte S. Chester should deliver to the company three hundred and seventy-five shares of its capital stock, in consideration of the company executing to her or her assigns a second mortgage on the property of the company, between Eighth and Ninth street on the Boardwalk, known as the Strand Theatre property; said mortgage to be a second mortgage, under and subject to a first mortgage of $65,000; the amount of the second mortgage to be $37,500, said mortgage to be payable within four years from date, with interest at the rate of six per cent., provided installments of $2,500 should be paid as follows:
"$2,500 one year from date.
"2,500 each six months thereafter.
"Balance to be paid within four years.
"Said mortgage to contain such other usual terms and conditions as the officers of the company might approve."
The following minute appears of a meeting of the stockholders thereafter held:
"Mr. Chester presented to the meeting the offer of Charlotte S. Chester to the company, which offer was passed upon, and accepted by the directors of the company, and which was left to the stockholders to ratify.
"The offer was as follows:
"That Charlotte S. Chester should deliver to the company three hundred and seventy-five shares of its capital stock, in consideration of the company executing to her or her assigns a second mortgage on the property of the company *Page 29 
between Eighth and Ninth streets on the Boardwalk, known as the Strand Theatre property; said mortgage to be a second mortgage, under and subject to a first mortgage of $65,000; the amount of the second mortgage to be $37,500; said mortgage to be payable within four years from date, with interest at the rate of six per cent. provided installments of $2,500 should be paid, as follows:
"$2,500 one year from date.
"2,500 each six months thereafter.
"Balance to be paid within four years.
"Said mortgage to contain such other usual terms and conditions as the officers of the company might approve.
"Upon motion made, seconded and carried, it was resolved that the offer of Mrs. Chester to the company should be accepted and that the action of the board of directors on the offer pertaining to its acceptance, and the execution of the bond and mortgage in the sum of $37,500 should be ratified to the fullest extent.
"The motion was unanimously passed."
This action on the part of the directors was unanimously approved and adopted at a meeting of the stockholders of the company, held on the same day, as above, the certificate of the secretary, Ralph L. Chester, certifying that all of the stockholders of the company were present at the meeting when the resolution was passed.
All of the stockholders of the company having the right to vote were present and voted in favor of the resolution. The stock held by Shriver, never having been transferred upon the books of the company, the pledgor retained the right to vote it as the pledgor had not transferred that right to the pledgee. Thomas v.International Silver Co., 72 N.J. Eq. 224.
There can be no suggestion that Shriver, by reason of his holding these shares of stock not transferred on the books of the company, is entitled to notice of any meeting. Such notice would be useless and ineffective, he having no right to vote or participate in such meetings, the stock books being the only evidence as to who had the right to vote. In re Cedar GroveCemetery Co., 61 N.J. Law 422. *Page 30 
A stockholder is not entitled to vote unless he be an original subscriber or unless he be registered on the company's books.Fidelity Trust Co. v. Newark Milk and Cream Co., 89 N.J. Eq. 224.
The sole attack made in this case is as to the consideration of the mortgage. The consideration as between Sutton and Chester, whereby the Chesters nominated Mr. Sutton to be the mortgagee is clear, precise and, in so far as any proof is presented, entirely without question. Mrs. Sutton received the consideration, which amounted to nearly $50,000, in the manner and method agreed upon, for which she assigned her stock. It is clearly manifest that she must have known the consideration of the mortgage as between the corporation and the Chesters, as she participated in the directors' and stockholders' meetings at which the resolutions concerning Mrs. Chester's stock were adopted.
The company had the power to reduce its stock. Section 29 of the General Corporation act (Comp. Stat. p. 1616) reads:
"The decrease of capital stock or of capital may be effected by * * * by the purchase of shares for retirement, either pro rata
from all holders of shares of that class of stock or from time to time by purchase in the open market at not exceeding such price or prices as are fixed or approved by the stockholders entitled to vote upon the decrease to be effected in that manner."
Said act provides that shares having a par value, not more than such par value shall be charged against or retired out of the capital of the corporation, although in buying stock for retirement, a corporation is required to purchase ratably from each stockholder who desires to sell. General Investment Co. v.American Hide, c., Co., 98 N.J. Eq. 326.
All of the stock being held by the Chesters, either in person or in the name of corporations owned by them, and all stock having been voted in favor of the sale, no presumption of invalidity of such sale can be deemed to exist by reason of the lack of proof of a minute indicating that the said purchase waspro rata from all holders of shares. *Page 31 
Said section further provides that if such decrease shall result in the reduction of the capital of the corporation, a certificate stating such fact and the manner of effecting the same shall be published in fifteen days after the filing of the certificate of decrease in the office of the secretary of state, and it provides that in default thereof the directors shall be liable for all debts of the corporation.
It will be noted that Mrs. Chester paid to Mrs. Sutton under the contract made during Mr. Sutton's lifetime approximately $80 per share for the stock purchased by her and that she sold the same to the company at par $100. If the true situation is that the three hundred and seventy-five shares of stock have been redeemed by the company and the capital stock reduced to that extent, and in the absence of any fraud on the part of the Ocean City Title and Trust Company or of Mrs. Sutton, or notice of fraud by others which can be imputed to said trust company or Mrs. Sutton, this petition must fall.
This is an application to set aside a mortgage made by a corporation upon the ground that no consideration passed to the corporation. A consideration did pass, that is, par value of shares of stock presented by a stockholder and accepted by the company for cancellation. Whether or not the stockholders of the corporation have the power to give a selected stockholder a mortgage lien on its assets or stock is a question that is not presented by counsel in this matter. Petitioner held this stock by assignment as collateral for loans made by him by agreement or otherwise. He has refrained from causing this stock to be transferred on the books of the company, therefore, Chester, the one in whom the stock was registered in said books retained the voting rights thereof. The petitioner is bound by the acts of the stockholders or directors not ultra vires or fraudulent.
I will advise an order dismissing the order to show cause and vacating the restraint. *Page 32