### William L. Jones

### *v.*

### Maria Davenport.

1. A decree or judgment on a matter outside of the issue raised by the pleadings is a nullity.

2. The great purpose intended to be accomplished by a final decree in an equity suit is to settle and determine, justly and finally, the rights of all persons having a material interest in the subject-matter put forward by the complainant as the foundation of his right to relief.

Jones v Davenport.

3. Final decrees, after enrollment, are, as a general rule, unalterable in any material respect by the court which made them, except under a bill of review, or by a rehearing, but they may be amended whenever amendment is necessary to give full expression to the judgment of the court, and the amendment is such as the court would have made, when the decree was entered, if it had been asked for.

4. A complainant will not be allowed to amend his bill after final hearing so as to make a new case, or to state a new and additional claim to relief.

5. Courts can only hear and determine causes on the pleadings actually filed, and not on what parties may agree they shall be.

6. An agreement for the amendment of a pleading amounts to nothing at all until the agreement has been executed by an actual change in the pleading.

7. After a suit has been fully heard on final hearing, on all the issues contained in its record, and a final decree has been made and enrolled which correctly expresses the judgment of the court, and the judgment of the court is free from error or mistake, the suit, except some appellate proceeding be taken, is at an end forever, and the power of the court, in that particular case, exhausted, and nothing further can be done in the suit except to enforce the judgment of the court.

8. A creditor who delays asking to be admitted as a co-complainant in a creditor's suit until after the case has been heard on final hearing, should only be admitted, unless his admission is by consent, on condition that those who have expended the labor and incurred the risk of trying the case be first paid.

On application for leave to amend bill and to enter a new final decree.

*Mr. Charles A. Reed* and *Mr. R. V. Lindabury*, for the applicant.

*Mr. Edward M. Colie* and *Mr. Thomas N. McCarter, contra.*

VAN FLEET, V. C.

This suit, together with two others, namely, Daniel B. Fayerweather and others against Maria Davenport, and the First National Bank of Somerville against the same defendant, were heard together, by arrangement of counsel, but not consolidated. They were all decided by a single opinion, which will be found reported in *17 Stew. Eq. 33.*

The design of all three of the suits was to reach certain property which it was alleged the husband of the defendant trans-

ferred to her, in fraud of his creditors, shortly before his death. The bill in this case assailed the validity of certain conveyances of land, but contained no charge of fraud in respect to the transfer of personal property, which was sufficient, if it had been admitted to be true, to have entitled the complainant to a decree. The bills in the other two cases stood on a broader foundation. They charged, not only that the deeds mentioned in the bill in this case were fraudulent, but also that one hundred shares of the capital stock of the First National Bank of Jersey City had been transferred to the defendant in fraud of creditors. The bill in this case does allege that personal property had been fraudulently transferred to the defendant, but in a form so vague and uncertain as to lay no foundation for a decree. This is what the bill says on that subject :

"The said James S. Davenport was also, in his lifetime, possessed of sundry railroad stocks, bonds and other personal securities, to an amount exceeding $20,000, which, after the said firm of Davenport Brothers became embarrassed, he transferred to Maria Davenport. Your orator charges that the said transfer was fraudulent and void as against your orator and the other creditors of Davenport Brothers, and that said securities, and the proceeds thereof, are held by the said Maria Davenport in trust for your orator and the other creditors of Davenport Brothers."

This averment, it will be observed, lacks almost every essential requisite by the rules of pleading in stating a case of fraud. The property transferred is alleged to have consisted " of sundry railroad stocks, bonds and other personal securities." The stocks and bonds of what railroad ? how many shares of stock and how many bonds ? What is meant by personal securities ? When were the transfers made ? On all these subjects the defendant was entitled to certain and definite information before she could be required to answer ; and it was also necessary that the court should have like information before it commenced the hearing of the cause. The transfers are also charged to have been made fraudulently, and for that reason to be void against the complainant. But why ? Were they voluntary, or made for an insufficient consideration, or made for a full consideration, but with design on the part of the transferee to assist the debtor in placing

his property beyond the reach of his creditors? Without the facts necessary to answer these questions appearing in the bill, it would not be possible for the court to see whether the act which the complainant denounced as fraudulent was so or not. All that the bill now says is that the transfer was fraudulent, without, however, telling how or why. A conclusion or an opinion is simply averred without giving the facts on which it is founded. This amounts to nothing at all as a pleading. The rights of the parties in every litigation must be adjudged according to the facts of the case, as they shall be made to appear; and in order that the court may ascertain what they are, it is necessary that they should be plainly and distinctly alleged by one party, and either admitted or denied by the other.

Although the proofs offered on the hearing were sufficient to convince the court that the transfer of the one hundred shares of bank stock had been made in fraud of creditors, the court declined to make a decree in this suit awarding relief on that ground, for the reason that the bill contained no averment which would support such a decree. A decree was accordingly made in this suit setting aside certain conveyances of land, and in the other two cases setting aside the same conveyances, and also the transfer of the bank stock. And as it had been proved on the hearing that the defendant had sold the bank stock shortly after its transfer to her for $18,000, it was adjudged that the complainants in the other two cases were entitled to recover that sum of her, or so much thereof as should be necessary to pay and satisfy their debts, and writs of execution for that purpose were awarded. Decrees in favor of the First National Bank of Somerville and of Daniel B. Fayerweather and others were entered on the 16th day of April, 1888, and the decree in this case was made on the 1st of May, 1888. Executions on all three of the decrees were subsequently issued, under which the lands adjudged by the decrees to have been conveyed in fraud of creditors were sold. The money thus raised was paid to the First National Bank of Somerville, and to the complainant in this suit, under an order of the court, made in June, 1888, pursuant to the consent of the solicitors of the complainants in the three cases.

Jones v. Davenport.

On the 14th day of August, 1888, an amended final decree, dated on the 16th day of April, 1888, adjudging that the transfer of the bank stock was fraudulent as' to the complainant, and also as to another person, who, by an order, made by consent, had been admitted as a complainant in June, 1887, was entered in this suit on the consent of the solicitors of the parties to this suit, but without examination or consideration by the court, and also without any change in or amendment of the bill. The amended decree has since been declared by the court to have been irregularly entered. There can be no doubt that that decree was an absolute nullity. The principle is authoritatively settled, that a decree or judgment, on a matter outside of the issue raised by the pleadings, is a nullity, and is nowhere entitled to the least respect as a judicial sentence. *Munday* v. *Vail, 5 Vr. 418; Reynolds* v. *Stockton, 16 Stew. Eq. 211.*

Now, after this cause has been finally heard on all the issues raised by the pleadings, and decided, and the final decree made thereon has been fully executed by a sale of all the lands in respect to which the complainant was given relief, and distribution of the proceeds made, the complainant asks leave to amend his bill, now as of the 27th of October, 1885, by adding to its premises such averments as will entitle him to a decree giving him the same relief in respect to the bank stock that was awarded to the complainants in the other two causes, and he also asks that, after such amendment shall have been made, an order be made confirming and establishing the amended final decree, which was filed on the 14th day of August, 1888. To me this appears to be a startlingly novel application. Stated plainly it amounts to this: The court is asked, after it has heard and finally decided a cause, and after its judgment has been fully carried into effect, though the complainant has not received all the money from the defendant which, by the decree, he is entitled to, to open the cause and let the complainant make a new case against the defendant, or allege a new ground for relief, as of a date long antecedent to the final determination of the cause, and then attempt by an order, founded on nothing but the defendant's consent, to impart legal efficacy to a decree which was, when it

6

was made, and still is, an absolute nullity. It is not possible for me to imagine any state of circumstances or condition of facts which would justify or make it safe or proper to grant such an application.

The great purpose intended to be accomplished by a final decree in an equity suit is to settle and determine, justly and finally, the rights of all persons having a material interest in the subject-matter put forward by the complainant in his bill of complaint as the foundation of his right to relief, and for this reason it is a leading rule of equity procedure that all persons materially interested, either legally·or beneficially, in the object of the suit, shall be made parties to it, to the end that full and complete justice may be done to all, in respect to the particular subject-matter of the litigation, and that all further litigation concerning such subject-matter may be prevented. " It is the constant aim of courts of equity," says Judge Story, " to do complete justice by deciding upon and settling the rights of all persons interested in the subject-matter of the suit, so that the performance of the decree may be perfectly safe to those who are compelled to obey it, and also that future litigation may be prevented." *Story Eq. Pl.* § *72.* Final decrees in equity have, in consequence, from a very early date, been held, so far as the power of the courts making them was concerned, to be unalterable in any material respect, not covered by the judgment in the particular case, except the alteration is sought by bill of review or a rehearing. Lord Bacon's first ordinance declares, that no decree shall be reversed, altered or explained, being once under the great seal, but upon a bill of review. *Beames Orders 1.* By both the ordinance of Lord Cornbury and that of Governor Franklin the ordinances of Lord Bacon were made the law of this court. Those ordinances both ordain, that the court of chancery established in the province or colony of New Jersey, shall hear and determine all causes and suits, which come before it, as near as may be according to the usage and custom of the high court of chancery in the kingdom of. England. *4 C. E. Gr. 579.* As a rule of practice, the ordinance of Lord Bacon above quoted, is adhered to wherever equity jurisprudence is administered. Judge

Story says that it has never been departed from (*Story Eq. Pl. §
404*), and Mr. Daniell says that a decree which has been enrolled
is not susceptible of alteration except by the house of lords or
by bill of review. *2 Dan. Ch. Pr. 1019.*

Notwithstanding the very broad and strong language in which
this ordinance is expressed, the construction which it has gener-
ally received does not deprive the court of the power of making
its recorded judgment conform to the judgment which it actually
pronounced, so that the record shall stand as the true exponent
of its mind. The court may, without a bill of review, or a re-
hearing, and on a petition merely, correct or amend its final
decree by supplying what may be necessary to make an existing
direction complete and effectual, but it cannot give a new direc-
tion (*2 Dan. Ch. Pr. 1030*); nor will the court change or vary
its decree where, in order to do so, it is necessary to correct a
fact already in evidence. *Brookfield* v. *Bradley, 2 Sim. & S. 64;
Gardner* v. *Dering, 2 Edw. Ch. 131.* And where the court is
asked to change its decree, so that the decree shall have a differ-
ent effect from that which the court intended it should have, the
application will, of course, be refused. *Stewart* v. *Forbes, 16
Sim. 433.* The rule respecting the amendment of decrees, as it
has been enforced by this court, may be stated as follows: The
court will not vary or alter an enrolled decree, in a material
point, without a bill of review or a rehearing, but it will amend
its enrolled decree, even in a material respect, on petition, when-
ever amendment is necessary to give full expression to the judg-
ment of the court, and the amendment is such as the court would
have made, when the decree was entered, if it had been asked
for. *Dorsheimer* v. *Rorbach, 9 C. E. Gr. 33; Jarman* v. *Wis-
wall, 9 C. E. Gr. 68.*

This court, in exercising its power to amend decrees, has never
gone beyond making its recorded judgment conform to the judg-
ment which it actually pronounced. But it is now asked to go
much further. It is now asked, after this case has been finally
determined, and the decree made on such determination has been
carried into effect, to allow the complainant to amend his bill by
making a new case, or stating a new and additional claim to

relief, and then, without a word of proof being offered in support of such new case, to make a decree giving relief on such new ground. It is entirely clear, that such an application could not be granted without violating almost every principle which has been established to secure fairness and safety in the administration of justice, and to render the final decree made in an equity suit a complete, conclusive and perpetual determination and settlement of the rights of all the parties involved in the suit. The application is not only without a precedent, but an anomaly. The nearest approach to it, to be found in the reports of this state, is the application which was made in *Codington* v. *Mott, 1 McCart. 430.* In that case a bill was filed to enforce the specific performance of a contract for the exchange of lands. After the period had expired within which the complainant should have taken his testimony, he applied for leave to amend his bill, by charging that the contract on which his bill was founded was obtained by fraud, and asking that it be declared void. Chancellor Green, in deciding the application, said (*p. 432*): "Amendments are made in equity with great liberality. They are, in fact, made at every stage of the proceedings wherever the substantial ends of justice will be thereby promoted. But the indulgence has its limitations, although, from the very nature of the case, it is difficult to fix the precise line beyond which the court, in the exercise of its discretion, will not go. Any imperfection in the frame of a bill may thus be remedied as often as occasion shall require. Thus, to enable the court to do complete justice, new matter, existing at the time of filing the bill, may be inserted, new parties added, irrelevant matter stricken out, and unnecessary parties omitted. But, as a general rule, material amendments should be applied for and made before the cause is at issue. Formal amendments, however, such as the introduction of necessary parties, and amendments of the prayer of the bill, to meet the exigencies of the case, will be made up to and after the final hearing." But, he says, the court will not permit a new case to be made after the time within which the complainant should have closed his testimony has expired. Lord Redesdale, in *Deniston* v. *Little, 2 Sch. & Lef. 11 n.,* said that it would be

extremely improper to grant an application allowing a complainant, after final hearing and before final decree, to amend his bill so as to make a new case. And he added that he knew of no case in which an amendment of that kind had been permitted after final hearing. Here leave is asked to amend not only after a final hearing has been had, but after a final decree has been made and executed.

The complainant grounds his application for leave to amend his bill on an agreement, alleged to have been made on the day the hearing commenced, by the solicitors of the parties to this suit, and also by the solicitors of the complainants in the other two suits. The solicitors of Fayerweather and others deny that they made such an agreement and all knowledge of its being made. No application was made to the court, on the day the hearing commenced, to amend the bill in this case, but such an application was made during the argument, not, however, to make an amendment similar to that now asked for, but an entirely different one. That application, it will be found, was passed upon in the opinion written in the cases. The complainant went to hearing on his bill as it now stands. That being so, no effect can, at this late day, be given to the agreement set up by the complainant, even if the proofs established its existence and terms beyond all doubt. Courts can only hear and determine causes on the pleadings actually filed, and not on what the parties or their solicitors may agree they shall be. One of the most important purposes intended to be accomplished in requiring written pleadings to be filed is, that the court may be informed, clearly and distinctly, what is the subject-matter of the suit, so that it may know on what point it will be required to pronounce judgment. An agreement for the amendment of a pleading amounts to nothing at all until it has been executed by an actual change of the pleading. The reasons against a contrary practice were forcibly stated by Chancellor Zabriskie in *Wilson* v. *King,* *8 C. E. Gr. 150, 154.* He said: "Neither an agreement to amend, nor an order giving leave to amend, amounts to an amendment, not even if filed in the cause. Such a practice could not be tolerated. It would lead to great and inextricable confusion in

Jones v. Davenport.

enrolling the proceedings. The enrolling clerk would have to collect the orders and agreements, if they were not mislaid and could be found, and by cancellations and insertions adjust them in the bill, in doing which he would be liable to commit serious errors." It is plain that such a practice would result in making that which ought to be perfectly certain and entirely free from error, extremely uncertain and almost sure, in many instances, to be characterized by dangerous error. Under such a practice, the enrollment, instead of being the end of the litigation, would not infrequently be the point at which the most protracted and expensive part of the contest would begin.

The defendant consents that both the orders for which the complainant asks may be made. The reason she consents is apparent. She is a relative of the complainant, and since it has been adjudged that she is liable for the value of the bank stock, she is naturally desirous to place the complainant in a position where he may have a right to participate in the distribution of any moneys which may be recovered of her on that account. Now, that her liability for those moneys has been fixed, it is natural that she should prefer that they should go to her relative rather than to others, especially as he did not, by his bill, assail her title to the bank stock, nor assist in demonstrating that it was fraudulent. But neither her wishes nor her act can have the least effect on the rights of the complainants in the other suits. Nothing she can do can deprive them of the advantage they have obtained by their vigilance and diligence. Aside, however, from the motive which induced her to consent, I think it is clear, on principle, that nothing she can do can have the least effect in removing the difficulties which stand in the complainant's way. Those difficulties, in my judgment, are fundamental, and, consequently, are insurmountable. Judicial power is subject to certain just and reasonable limitations, one of which is, that after a suit has been fully heard on final hearing, on all the issues contained in its record, and a final decree made and enrolled which correctly expresses the judgment of the court, and the judgment of the court is free from error or mistake, the suit, except some appellate proceeding be taken, is at end forever, and the power

of the court, in that particular case, exhausted, and nothing further can be done in the suit except to enforce the judgment of the court. Any other view as to the effect of a final decree, which is correct in form, and free from error of either fact or law, would defeat the fundamental purpose intended to be accomplished by every suit in equity, which is to obtain a judicial sentence set- tling, clearly, accurately and perpetually, the rights of the parties in the subject-matter of the suit.

The applications of the complainant must be denied, and the amended final decree entered in August, 1888, must be set aside.

Another question was discussed on the argument, namely, whether an order entered in this suit, after final hearing, but before the final decree was made, admitting Abraham Van Nest as a co-complainant, was properly entered or not. The counsel of Fayerweather and others insist that it was not, their conten- tion being that an order of the kind in question should not be made after the case has been finally heard. Chancellor Bland held, in *Strike's Case, 1 Bland 57,* that it was the right of any creditor of the defendant to be admitted as a co-complainant either before or after final decree; in fact, at any time before the property recovered was distributed. In *Smith* v. *Craft, 11 Biss. 340,* it was held, that if a creditor asked admission after the court had announced its decision he should only be admitted on con- dition that the payment of his claim was postponed to that of the complainant. Chancellor Kent held, that a creditor who by superior diligence had acquired a judicial preference, was en- titled to have such preference preserved to him when the assets were distributed. *McDermutt* v. *Strong, 4 Johns. Ch. 687.* And Chancellor Walworth, in *Edmeston* v. *Lyde, 1 Paige 639,* said that it did not seem just that a creditor who had sustained all the risk and expense of bringing his suit to a successful termination should be compelled to divide the fruits of his efforts with those who had intentionally kept back until there was no risk in be- coming parties to the suit. My own view as to the true rule on the subject is this—that where a creditor delays asking to be ad- mitted until the cause has been finally heard, he should only be admitted, unless his admission is by consent, on condition that

those who have expended the labor and incurred the risk of trying the case be first paid. No such terms, however, can be imposed in this case. The order admitting Mr. Van Nest was made with the complainant's consent. He does not ask to have it set aside; on the contrary, he desires it to stand. The only effect the order can have, as it seems to me, is to confer upon Mr. Van Nest a right to participate with the complainant in the distribution of any moneys which may be raised by virtue of the decree made in this suit. That decree gives no relief whatever in respect to the bank stock. The complainants in the Fayerweather suit are not, therefore, so far as I can see, in any way injuriously affected by the order in question, and for that reason I think it should be allowed to stand.