This is a suit for partition of lands formerly owned by one Solomon Nathan. He acquired the lands in the year 1880 *Page 383 
and lived there with his wife and family for about two years, at which time he left them, never to return. On May 19th, 1884, he executed a deed, in which his wife did not join, conveying the premises to one Esther Friedberg who concededly was only a dummy for Nathan. On June 12th, 1884, Esther Friedberg executed a power of attorney to Nathan who, as her attorney-in-fact, executed a deed dated January 19th, 1886, conveying the lands to his mother-in-law, Jette Nathan. The main question in this suit is as to whether this conveyance was absolute, or whether, as contended by defendants, it was in trust for the benefit of the children of Solomon Nathan. Both the foregoing deeds, together with the power of attorney, were recorded. There is no record of any declaration of trust executed by Jette Nathan, although the defendants claim that such a document was executed but was lost.
Jette Nathan died in 1905, leaving a will whereby she devised her residuary estate, one-half to each of her two daughters, Jeanette Rosenberg and Ernestina Nathan, the wife of Solomon Nathan. Complainant claims as assignee of all but one-ninth of the one-half interest, if any, passing by inheritance from Jeanette Rosenberg who died in 1914. The defendants Ralph and J. Harry Nathan, sons of Solomon and Ernestina Nathan, claim the entire premises; alleging first, that they had title by virtue of a lost declaration of trust by Jette Nathan made for the benefit of the children of Ernestina Nathan, and second, that since 1886 their mother and they until her death in 1921 and they since 1921, have been in peaceable possession of the premises, claiming to own the same.
Some years ago, the Nathans entered into a contract with one Brauer, agreeing to convey the premises to him. He brought a suit for specific performance naming the Nathans and the Rosenbergs, assignors of the complainant in the present suit, as defendants. The suit was tried before Vice-Chancellor Fielder and was dismissed. There was evidence introduced at this trial relating to the declaration of trust by Jette Nathan for the benefit of the Nathans; and Vice-Chancellor Fielder made findings to the effect that the declaration *Page 384 
of trust had not been established. In the present suit complainant contends under the doctrine of res adjudicata, that this conclusively precludes the Nathans from setting up the existence of a declaration of trust. This contention is unsound, since in the Brauer suit the issue between the Rosenberg group and the Nathan group was not litigated by any issue raised in that suit by way of counter-claim or otherwise. The doctrine ofres adjudicata applies only to issues necessarily decided in the first suit which were litigated between the parties to the first suit as between themselves.
In Clark Thread Co. v. Wm. Clark Co., 55 N.J. Eq. 662, the court says: "Only those issues which are common to both suits, and which had to be or were actually decided in the first suit, are regarded as res adjudicata." In Nagle v. Conard, 96 N.J. Eq. 61
(at p. 64), the court says: "The principle is authoritatively settled that a decree or judgment on a matter outside of the issues raised by the pleadings is a nullity and is nowhere entitled to the least respect as a judicial sentence.Jones v. Davenport, 45 N.J. Eq. 77. In a second suit between the same parties for the same cause of action all triable matters within the issues are res judicata. In a second suit between the same parties for a different cause of action only those matters within the issues actually litigated and determined asres judicata." In addition, it will be noted that Brauer, the complainant in the specific performance suit, was in no way a privy to complainant or complainant's assignors, the Rosenbergs.
While therefore the decree of dismissal in the Brauer suit is not res adjudicata on the issue of a declaration of a trust by Jette Nathan, I have come to the same conclusion and find that the declaration of a trust by her for the benefit of the children of Ernestina Nathan has not been established. In the absence of the production of a written declaration of trust, proof of a lost document must be by clear and convincing evidence. In reBernhardt, 143 Atl. Rep. 92. Such evidence has not been produced here. It rests almost solely upon the testimony of one of the defendants and lacks corroboration. Other witnesses were produced who testified to oral *Page 385 
declarations said to have been made many years ago in their presence by Jette Nathan to the effect that she held the premises in question for the benefit of the children of her daughter, Ernestina Nathan. These are not corroborative of the existence of a formal written declaration of trust and under the parole evidence rule, are not admissible to create a trust in lands. I therefore find that there was no valid trust created by Jette Nathan for her grandchildren.
The other aspect of the case relates to the contention by defendants that they, since the death of their mother in 1921, and that they and their mother were in possession of the premises ever since the year 1886, the date of the conveyance by Esther Friedberg to Jette Nathan. There seems to be an inconsistency in the assertion of possession by their mother during her lifetime, together with themselves. They assert a claim under the declaration of trust by Jette Nathan ever since she acquired title. This alleged trust is for the benefit of the children of Ernestina Nathan so that possession by her would tend to discredit rather than support defendants' claim during this period. In any event, I do not find that the possession of the premises was such as to divest the Rosenberg group of their rights. In the absence of a valid trust declared by Jette Nathan by her will, her two daughters became tenants in common on her death in 1905. It will be noted that the premises had originally belonged to Solomon Nathan who, until his abandonment of the family in 1882, lived there with his wife and children, when the property was deeded in 1886 to Jette Nathan. It was entirely natural that Jette Nathan should allow her daughter and grandchildren to continue to occupy the premises. It was also further natural that Jeanette Rosenberg, after her mother's death, should allow her sister and nephews to remain in the same premises. Since she and her sister became tenants in common on the death of Jette Nathan, I find that the possession by Ernestina Nathan was merely permissive and therefore that neither Ernestina Nathan nor her children acquired title by possession. In the case of Foulke v. Bond, 41 N.J. Law 527 (at p. 538), the court says: "If the parties *Page 386 
are strangers in title, possession and the exercise of rights of ownership are in themselves, in the absence of explanatory evidence, proof of an ouster of the true owner; whereas, in cases of privity of title such as subsists between tenants in common, the acts of possession of one tenant will, in the absence of satisfactory evidence to the contrary, be referred to the community of title, and there must be clearer and more decisive evidence of an ouster by one tenant in common of his associate than is necessary to prove that a person having no right to possession has ousted an owner in severalty."
Complainant contends that defendants' claims to the property have not been properly pleaded, since they are asserted by way of counter-claim rather than by way of answer and they therefore have been waived. Since the findings of the court are adverse to the contentions of defendants, it is unnecessary to decide whether these questions were raised in technical compliance with the rules of pleading.
A decree will be advised as prayed for in the bill. *Page 387