J. A. B. HOLDING COMPANY, complainant-respondent,

*v.*

RALPH NATHAN, PEARL E. NATHAN, JACOB H. NATHAN and MINNIE NATHAN, defendants-appellants.

[Submitted February 14th, 1936.   Decided May 18th, 1936.]

*Messrs. Kelsey & Ludwig,* for the complainant-respondent.

*Messrs. Pierson & Brand,* for the defendants-appellants.

The opinion of the court was delivered by

RAFFERTY. J.

This is an appeal from a decree of the court of chancery wherein it was decreed that the party complainant was seized

of and entitled to a share of certain lands situate in Hudson county, ordering a sale of the lands and other incidental relief. The decree is challenged by appellants, defendants below, as being erroneous in several respects, principally, however, in that the court decreed that no valid declaration of trust in their favor by Jette Nathan, their grandmother, was satisfactorily manifest and proved.

The facts, briefly, are that Solomon, or Barnett Nathan, husband of Ernestina Nathan and father of Ralph, Jacob and Jeremiah, purchased the premises in question in 1880, moved with his family into a house on one of the tracts at about the time of the purchase and immediately commenced the construction of a building on the other tract. Solomon left his family about two years thereafter, inferentially because of domestic troubles, and thereafter, in 1884, executed a deed of conveyance of the premises, in which his wife did not join, to Esther Friedberg, taking back from Esther Friedberg a power of attorney. In 1886, Solomon, as attorney in fact of Friedberg, made conveyance of the premises to Jette Nathan, mother of Ernestina. Several months after the conveyance to Jette, Solomon, as attorney in fact of Daniel Nathan, assigned to Jette a mortgage affecting the premises in the amount of $5,000, which Solomon and his wife had executed and delivered to Daniel in 1883. Solomon never resumed the role of husband and father and appears to have died in 1920. Ernestina and her children continued in possession from the time she entered the premises with her husband in 1880, occupying one of the buildings, collecting rents and generally, with her children, exercising rights of possession and ownership until her death in 1921, she having removed from the premises in 1919. Thereafter, Ralph and Jacob, the survivors of Solomon and Ernestina, continued to collect rents until the premises became untenantable and have continued to exercise acts of dominion and ownership to the present time. Jeremiah died unmarried and intestate in 1896.

Jette Nathan appears never to have exercised any acts of dominion over, or ownership of, the premises aside from

accepting the Friedberg deed. Jette died in 1905, leaving a will duly probated in the State of New York, wherein, after making certain bequests, she devised the residue of her estate, without specifying the same in any detail, equally to her daughters, Ernestina Nathan and Jeanette Rosenberg. Jette, in this instrument directed her executors to sell her real estate as soon after her death as would be convenient and out of the proceeds to pay the bequests, &c., as specified in the will. At the time of the making of the will, Jette owned certain real estate in New York City, but had divested herself of this prior to her death. The executors have done nothing with respect to the premises in question. Jeanette Rosenberg died intestate in 1914, without having done anything with respect to these premises, leaving certain heirs-at-law, all of whom in 1929 and 1930, except Bertha Carolyn Rosenberg, then an infant, conveyed their interest in the premises to complainants below.

The resultant situation is that complainant below claims, through its grantors and Jette, by virtue of the conveyance to Jette, an undivided four-ninths interest in the property, Bertha Carolyn Rosenberg, now of full age, an undivided one-eighteenth interest, with the balance of interest equally divided between Ralph Nathan and Jacob Nathan, heirs of Ernestina.

It is contended, on behalf of Ralph and Jacob, that they are the owners of the whole premises, subject to the dower rights of their respective wives, and this contention is based principally upon a trust agreement claimed to have been executed by Jette at, or about the time of the Friedberg conveyance to her, in favor of the children of Solomon and that, however, assuming that Jette was not their trustee, they have established ownership by adverse possession.

As to the trust agreement, defendants below produced Rafelson, eighty years of age, the surviving executor of the will of Jette, who also was her son-in-law. This witness testified that he knew of the property in question prior to the death of Jette, having at one time owned it, and that as executor of the will of Jette, he considered the property was

not a part of her estate and did nothing with respect to it. He stated that "a long time ago," later fixed at about 1886, he received a letter addressed to Jette, which, on the same day, he delivered to her. Jette evidenced displeasure that the letter was from Barnett (Solomon). She did not want to hear his name. She was afraid of him. He testified:

"So I told her, 'let us go to Adolph Cohen,' who was a very good friend of her, 'and see what he will advise us to do.' So she went with me there and he looked at the letter and he said to her, 'this letter is for her to sign about a deed was recorded in her name and she didn't give no money for the deed.'"

Cohen, who was a lawyer and is now deceased, said further, "this paper is for her to sign that the deed is in trust to Jette Nathan for the benefit of her daughters' children." Rafelson testified that Jette thereupon signed the paper. He later testified "she signed it [in Hebrew] that the deed was in trust for the children and that she didn't pay any money for it. The deed was in trust." After the execution of the paper in the office of Mr. Cohen, Jette delivered it over to Rafelson, who put it in his safe and about six or seven years after it was signed, delivered it to Ralph, who had become a lawyer. Rafelson was familiar with her property and her affairs. Jette, in several conversations, when talking about Solomon and the premises in question, stated in the presence of Rafelson and other parties substantially that it was a good thing this property was signed over to her in trust for the children. There was corroborating testimony as to these matters.

Bernard Levinson, now about eighty-one years of age, a nephew of Jette, and brother of the co-executor, now deceased, of the will of Jette, testified that about 1893, Jette had consulted him with reference to the management of her real estate and that she then stated to him that she owned no other real estate than that in New York City. It is evident from the testimony of this winess that Jette had great confidence in those with whom she conducted her business dealings, as she agreed with this witness to give him a deed to the New York property, he to sell it whenever the opportunity presented itself.

Ralph Nathan, a party defendant below, corroborated Rafelson as to the delivery to him by Rafelson, of the instrument referred to above and that he, Ralph, delivered the instrument to an attorney in New Jersey, now dead, in connection with a condemnation matter. The instrument was to be recorded, but this has not been done and he has not seen the instrument since, although search for it has been made.

Our statute provides that all declarations and creations of trust in lands shall be manifested and proved by some writing, signed by the party, who is by law enabled to declare such trust or else they shall be utterly void and of no effect. *2 Comp. Stat. p. 2611 § 3.*

Secondary evidence is admissible to establish a lost writing essential to satisfy the statute that an express trust in lands "shall be manifested and proved by some writing, signed by the party." The best evidence is the writing itself, duly authenticated; but its production to the court is not indispensable. If it be lost, it may be proved in the same manner as any other lost document is established. The statute requires the execution of a writing which manifests and proves the trust, not that the trust shall be proved by the production of a written declaration of the trust. *Frank* v. *Pillsbury, 104 N. J. Eq. 383.*

Where the memorandum required by the statute was duly made and signed by the party to be charged, and is afterwards lost or destroyed, its contents may be proven by oral testimony in an action against such party. Proof, however, to establish the lost memorandum must be clear and convincing. The memorandum itself is of course the best evidence of its contents and if its loss or destruction is not proven secondary evidence is not admissible. *25 R. C. L. 638 ¶ 265.*

The burden of proving the existence of the trust and the written declaration thereof was, of course, upon appellants. It was also their burden to prove the loss or destruction of the declaration of trust. These matters must be proved by clear and cogent evidence influencing the mind of the court to a reasonable probability that the trust was created and

declared with such formality as is required by the statute. The facts of the instant case meet this test. It cannot be said that the failure of Ernestina to join in the conveyance to Friedberg was an oversight or accidental. Rather it bespeaks hostility. The continued use and occupation and enjoyment of the profits of the premises by Ernestina and her children without interference on the part of Friedberg or Jette, or the heirs of Jette, until the institution of these proceedings, is persuasive that Jette held the premises in trust as contended and that it was so understood between the parties. Rafelson, son-in-law and confidante of Jette and executor of her will, was quite clear as to the existence of the trust and the execution of the declaration of trust. The testimony of Levinson supports the conclusion that Jette did not consider the property as her own. The explanation of the circumstances surrounding the loss of the document is reasonable and believable.

Giving great weight and respect to the conclusions of the court below, we are, nevertheless, led irresistably to the understanding that, as contended, a trust was created and declared in writing in compliance with the statute by Jette, and we are satisfied that this written instrument has been lost and that the requirements of proof have been complied with.

Having so concluded, it is unnecessary to consider the question of adverse possession also urged by appellants.

We are not unmindful of the procedural questions and other matters presented by respondent. These, too, have been considered, but, without making any expression as to the validity of the points raised, they are not of sufficient importance to change the result here reached.

The decree appealed from is reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, JJ. 12.