JACOB L. SOLOMON, complainant-respondent,

*v.*

FEDERAL TRUST COMPANY, a corporation, and ABE BIRN, defendants-appellants.

[Decided January 26th, 1938.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who filed the following opinion:

"This litigation concerns title to seven and one-half shares of paid-up building and loan stock, formerly owned by Abe Birn and held by the Federal Trust Company as collateral.

September 12th, 1933, William Hodes was appointed trustee in bankruptcy for Birn's estate and thereupon became vested, by operation of law, with title to the stock, subject only to the Trust Company's lien in the amount then secured thereby. This amount was $150 on Birn's note and $1,300 on a note of Birn Holding Company, endorsed by Birn. The following May, when Birn's note had been reduced to $50, the Trust Company, although it had actual knowledge of the bankruptcy, and presumably had knowledge that the stock belonged to the trustee, loaned Birn $500 on the security of the stock and out of this amount the $50 owing on the original loan was paid. On March 6th, 1935, the trustee in bankruptcy sold the stock, among other minor assets, to one Liebeskind, who, the following day, transferred the shares to complainant. Shortly thereafter Birn's loan was paid in full and a few days later, the Trust Company made another loan to him of $500 on the security of the stock. This loan is still unpaid. The Holding Company loan which had been gradually reduced to $550, was finally paid December 21st, 1936. The Trust Company holds the stock as collateral for the $500 loan of April, 1935. Birn claims the equity in the shares over the amount due the Trust Company. They both rely on an alleged abandonment of the shares by the trustee in bankruptcy, and on laches.

"The facts relating to abandonment are these: On August 3d, 1933, Hodes, who was then receiver and not trustee, had a conversation with one of the officers of the Trust Company and was told that the Trust Company held the stock as security for $1,550 which was an amount greater than the value of the stock. As a result of that conversation, the Trust Company says it believed that Hodes would make no claim for the collateral. The Trust Company does not, by answer or affidavits, assert that Hodes made any statement which led to this belief. Whether he did or not is immaterial, for a receiver is a mere custodian without power to abandon any claim or asset of the bankrupt.

"On December 6th, 1934, the Trust Company received from the trustee in bankruptcy a letter as follows: 'We are

desirous of closing out the bankruptcy matter of Abe Birn and must either sell the receiver's right, title and interest in and to the collateral you hold on the loan of the Birn Holding Company or abandon same. We cannot abandon it without the authority of the court and would therefore appreciate your sending us a letter advising how much is still due to your bank on the Birn Holding Company loan.' The Trust Company replied. Then, on February 1st, 1935, the Trust Company received from the referee in bankruptcy a notice that on March 6th, 1935, he would hear an application to sell or abandon certain assets which the trustee considers worthless and which are mort particularly set forth in the trustee's final report. The Trust Company ignored this notice. At the date named in the notice, an offer to buy the shares and other assets was made and accepted.

"The case is entirely barren of anything else from which an abandonment of the stock might be gathered. Clearly the stock was not abandoned.

"Now as to laches. Complainant had no right to possession of the stock until December 21st, 1936, when the Holding Company note was paid. A month later, on January 29th, 1937, he demanded of the Trust Company the stock certificates and was refused. He filed his bill February 16th, 1937. Nothing happened in the period between December 21st, 1936, and the beginning of the suit, which in any way prejudiced the Trust Company or Birn. Was there anything which the trustee in bankruptcy or complainant should have done and failed to do prior to December 21st, 1936? Birn and the Trust Company both knew of the bankruptcy proceeding and neither claims ignorance of the law which vests title to the bankrupt's estate in the trustee. The trustee was under no duty to say to them, 'I own the shares subject to the Trust Company's lien.' Neither was complainant under such a duty, although, as a fact, he informed the Trust Company of his purchase within a few weeks after he had taken title. Complainant and the trustee in bankruptcy were not guilty of laches.

"Neither has there been any mistake against which equity may give relief. Birn and the Trust Company fully understood both the facts and the law, but they acted on the entirely unwarranted assumption that since the stock at the time of the appointment of the trustee was pledged as collateral for an amount greater than its value, therefore the trustee would not assert his title even though the lien was paid off. Their position could not be justified even if the debt secured by the stock had all been the direct obligation of Birn, the bankrupt. Still less can it be upheld, since all the debt, except $150, was the primary obligation of a third party, the Birn Holding Company.

"Defendants also point out that Liebeskind paid a ridiculously low price for the stock—$10. This was no concern of theirs. They would be no better off if he had paid $1,000. Complainant's title as against defendants and his right to the aid of this court are not affected by the amount paid to the trustee in bankruptcy.

"The answers and Birn's counter-claim will be struck."

*Messrs. Fast & Fast,* for the appellants.

*Messrs. Kanter & Kanter,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons set forth in the opinion filed by Vice-Chancellor Bigelow in the court of chancery.

*For affirmance*—PARKER, LLOYD, CASE, BODINE, DONGES, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 12.

*For reversal*—HEHER, J. 1.