In Taylor v. Riggs, 1 Pet. 591; 7 L.Ed. 275, Chief-Justice Marshall stated: "When a written contract is to be proved, not by itself but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proven satisfactorily, and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim that he cannot support. When parties reduce their contract to writing the obligations and rights of which are described and limited by the instrument itself, the safety which is expected from them will be much impaired if they could be established upon uncertain and vague impressions made by conversation antecedent to the reduction of the agreement."
This court has declared that in undertaking to establish and enforce a lost instrument, the execution and material contents of the instrument must be disclosed by a degree of *Page 599 
proof described as "clear," "cogent," "reasonably certain" and "convincing." Van Horn v. Demarest, 76 N.J. Eq. 386;77 Atl. Rep. 354; affirmed, 77 N.J. Eq. 264; 77 Atl. Rep. 369;Borstelman v. Brohan, 81 N.J. Eq. 401; 87 Atl. Rep. 145;Maddock v. Connolly, 82 N.J. Eq. 533; 91 Atl. Rep. 735;affirmed, 82 N.J. Eq. 609; 90 Atl. Rep. 314; J.A.B. Holding Co.
v. Nathan, 118 N.J. Eq. 382; 179 Atl. Rep. 457; affirmed in respect to required quality of proof, reversed on other grounds in 120 N.J. Eq. 340; 184 Atl. Rep. 829. The pertinent decisions in other jurisdictions relative to the requisite quality of proof are collated in 148 A.L.R. 402.
The parties to this suit are husband and wife. The alleged cause of action of the husband may be adequately revealed by a brief quotation extracted from the bill of complaint:
"6. A long time after their marriage and while they were still in New York City, defendant advanced money to complainant's business and thereupon complainant, during the early part of 1938 assigned to defendant all of his said interest in his said business then located at No. 513 Amsterdam Avenue, as aforesaid, except to the extent of $2,000, which was at all times to remain as complainant's interest and ownership in said business, and that his said interest was not to merge with the defendant's interest, but to remain distinct, separate and apart as his own at all times thereafter, and, with the further expressed understanding that the complainant was to draw the sum of $10 a week from the profits of said business for the use of his said $2,000 in said business, which drawing was separate and apart from the ordinary expenses of the home and of the business, for which latter expenses complainant employed himself in said business and provided the management thereof."
The complainant seeks to recover from his wife the sum of $2,000 and also the weekly quittances which he asserts have not been paid to him since January, 1943.
At final hearing it became unquestionable that the complainant seated his claim upon the covenants of a written contract which unfortunately neither he nor the defendant is now able to produce. It is represented that the instrument *Page 600 
itself was filed in a public record office in the City of New York, but a transcription of the instrument is not in practice there entered in any permanent record book. The instrument is retained for a stated period and then destroyed. Such, it is said, has been the fate of the document from which the complainant derives his alleged cause of action. Accordingly the complainant encounters the burden of proof that descends upon one who undertakes to establish and enforce the terms and covenants of a lost or destroyed instrument. Maryott v. Swaine, 28 N.J. Eq. 589; Maddock v. Connolly, supra.
It seems evident that in the years immediately preceding 1938 the mercantile business of the complainant had not been prosperous, and the complainant was obliged to borrow funds occasionally from his wife. These loans ascended to an accumulated total of $3,000. His creditors were uneasy. Whatever may have been his motive, the complainant in 1938 evidently determined to divest himself of some of his resources. A $5,000 mortgage owned by him, he decided to assign to his daughter, born of a previous marriage. To discharge his indebtedness to his wife, he resolved to transfer to her his business and its stock of merchandise. To legally effectuate the latter purpose, a nephew of the defendant was delegated to employ some attorney to prepare the appropriate instrument in legal form. The directions for the preparation of the instrument were imparted to the attorney by the nephew, who in turn received the paper from the attorney and delivered it to the complainant and his wife. It is also the impression of the nephew that he then accompanied the complainant to a notary public, before whom the execution of the instrument by the complainant was acknowledged. The defendant declares that she did not sign the instrument and was not requested to appear before the notary. No one associated with the transaction now recalls the identity of the attorney. Indeed, in 1938 the store in New York was closed and the business transplanted to New Brunswick, New Jersey.
The surrounding incidents favor the conjecture that the instrument was a bill of sale. The nephew is confident that *Page 601 
he was not directed by the complainant or the defendant to instruct the attorney to embody in the instrument any reservation by the complainant of an interest in the business and its assets or to request the attorney to include in the writing any covenant concerning a weekly payment to be received by the complainant. That the instrument, when prepared, contained such provisions is not in accord with his present memory of the event.
The defendant, who admittedly presented the instrument at the register office for filing, is positive that the document evidencing the sale of the business to her did not embrace any of the qualifying provisions which the complainant now undertakes to invoke. She avows that she never heard of any "reservation of a $2,000 interest" until she was informed of the charges of the bill of complaint in this cause. She explains that it was contemplated that the complainant would continue to render services in the conduct of the store and that it was understood, independently of the transfer, that the complainant in such circumstances should receive weekly out of the receipts the sum of $10 for his personal "pocket money."
The complainant, his daughter, and son-in-law profess to remember that the instrument transferring the stock and accessories of the business to the defendant also reserved to the complainant a "$2,000 interest in the business" recoverable by the complainant at his request, and additionally the right of the complainant to withdraw from the proceeds of the business the sum of $10 each week.
Reverting to the charges of the bill, there is not a scintilla of evidence of any agreement "that the complainant was to draw the sum of $10 a week from the profits of said business for the use of his said $2,000 * * *." It is likely that such an agreement would have been usurious under the statutory law of the State of New York, and moreover there is no proof that the business has since been conducted with profit.
I confess the inability to assemble the divergent and contradictory segments of the evidence into any edifying and distinct portrayal of the facts essential to sustain the complainant's right to relief. The shadows do not render the *Page 602 
substance sufficiently perceptible. Overmuch cannot, of course, be demanded in the reproduction from memory of the words of a written instrument.
I am not persuaded that the instrument, which I suspect was a bill of sale, contained such a provision and covenant in all respects as described by the complainant. It seems unlikely that in discarding his assets, the complainant would have expressly and notoriously inserted such a reservation in the instrument of transference, or have attempted to originate and secure an indebtedness to him of $2,000 in such a manner.
What legal lineaments and characteristics may I ascribe to that which the lay person describes as "a $2,000 interest" in an unincorporated mercantile business? Assuredly in the present case a partnership was not intended to be organized. Does it connote merely a partial ownership in the tangible assets of the business? Certainly the mere retention by the complainant of a "$2,000 interest in the business" does not transport the implication that another likewise having an "interest" is obligated to pay $2,000 to the co-owner on demand.
As may have been surmised, the complainant and defendant have separated. The complainant has not since January, 1943, co-operated in any manner with the defendant in the conduct of the business. Accordingly she has declined to pay him $10 a week. I am not convinced by the requisite degree of proof that she is contractually obliged to do so.
And so, in the words of the illustrious Chief-Justice with which I began this memorandum, "The substance of the agreement ought to be proven satisfactorily, and if that cannot be done, the party is in the condition of every other suitor in court who makes a charge that he cannot support."
A decree must be advised dismissing the bill. In the circumstances, no costs. *Page 603