THE STATE OF NEW JERSEY, BY THEODORE D. PAR-
SONS, ATTORNEY-GENERAL OF THE STATE OF NEW
JERSEY, PLAINTIFF-RESPONDENT, v. OTIS ELEVATOR
COMPANY, A CORPORATION, DEFENDANT-RESPOND-
ENT, ABRAHAM GRENTHAL, SUBSTITUTED RECEIVER
OF J. B. SKEHAN & CO., DEFENDANT-APPELLANT,
AIDA M. RHODES, INDIVIDUALLY AND AS EXECUTRIX
OF THE WILL OF FRANK C. RHODES, DEFENDANT.

Argued September 30, 1952—Decided November 10, 1952.

See also 19 *N. J. Super.* 107, 88 *A. 2d* 20.

*Mr. Sol Phillips Perlman* argued the cause for defendant-appellant.

*Mr. Aaron Van Poznak* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

JACOBS, J. In 1949 the plaintiff State of New Jersey duly instituted its proceeding in the Chancery Division under *L.* 1946, *c.* 155, as amended (*R. S.* 2:53–15 *et seq.*), against the defendant Otis Elevator Company to escheat certain personal property in its custody or possession, including shares of its

corporate stock registered in the name of Frank C. Rhodes and the dividends thereon. In 1950 the defendant Abraham Grenthal, substituted receiver of J. B. Skehan & Co., claimed ownership of the Rhodes stock and dividends and in 1951 filed an answer asserting the basis of his claim. After trial the Chancery Division found that Grenthal had no valid claim and entered judgment declaring the personal property in the custody or possession of Otis Elevator Company to have escheated to the State. No appeal herein was taken except by Grenthal who duly filed his notice of appeal to the Appellate Division; his appeal has been certified to this court on its own motion.

In 1902 Certificate No. 1070 representing 35 shares of Otis Elevator Company stock was registered on the company's books in the name of Frank C. Rhodes, Bank of America, 44 Wall Street, New York, N. Y. Rhodes was an employee of the bank. A dividend check dated April 15, 1904, payable to Frank C. Rhodes, was cashed; no later dividend checks were ever cashed. Under date of October 20, 1909 the defendant Otis Elevator Company received a letter on the stationery of the Bank of America and signed Frank C. Rhodes, which returned a dividend check and stated:

"The certificate for the shares, which apparently still stand in my name upon your books, was endorsed by me and delivered to A. H. Vanderpoel, Esq., as Receiver of J. B. Skehan & Co., a number of years ago, and I have no further interest therein. I shall be obliged if you will note this fact upon your books in order that you may avoid sending me checks for future dividends, in the event that the present owner continues to omit to have the shares transferred."

There is no additional evidence to indicate that Certificate No. 1070 was in fact delivered to Vanderpoel. The original certificate has never been found, Vanderpoel never took any action bearing thereon, and the shares at all times remained registered in the name of Frank C. Rhodes. Nothing in the available records of the receivership of J. B. Skehan & Co. actually supports the position that Vanderpoel was entitled to or did receive the certificate. In January 1908 a stipula-

tion that the receivership action "be discontinued without costs" was signed by the receiver and his attorney, as well as by the attorneys for the parties plaintiff and defendant and the bonding company, and in February 1908 an order that the action be discontinued without costs was entered on motion of the receiver's attorney. Unless dereliction on the receiver's part is to be assumed, it might well be inferred that the receiver then retained no assets and that he either never had Certificate No. 1070 or had received it merely for transmission to another (perhaps a customer of the brokerage house of J. B. Skehan & Co.) as its rightful owner and had duly delivered it.

After the entry of the order of discontinuance in the receivership action, no further proceedings were taken therein until 1950 when Albert Lowenfels, as administrator of the estate of David Aaron, filed a petition for the appointment of a substituted receiver. His petition alleged, upon information and belief, that David Aaron, who died in 1896, was a proved creditor of J. B. Skehan & Co. which went into receivership in 1895, that the plaintiff and the defendant in the receivership action effected a discontinuance and "virtual termination of the receivership" on February 28, 1908 without notice to creditors, that there is an asset still existent and unadministered, and that a substituted receiver should be appointed with all the power and authority of the original receiver. On October 25, 1950 Grenthal was appointed by the New York Supreme Court as substituted receiver and thereafter asserted his claim to the Rhodes Certificate No. 1070 and its increments, including stock dividends and split-ups and cash dividends. The answer filed by him in the lower court set forth, in accordance with *R. S.* 2:53–22, substantially the following alleged circumstances in support of his claim of ownership:

General Electric Company and Sprague Electric Company had made arrangements for the exchange of securities; Sprague stockholders were to deposit their shares with the trustee United States Mortgage & Trust Company for de-

508

livery to General Electric and receive General Electric Bonds and Otis Elevator Company stock which General Electric held or was obtaining; on or about September 22, 1902 the Bank of America and its nominee Frank C. Rhodes deposited its holdings in Sprague with the trustee in accordance with the aforementioned arrangements; thereafter the trustee surrendered Otis stock which it had received from General for transfer and Certificate No. 1070 was issued in the name of Frank C. Rhodes, care of Bank of America, at 44 Wall Street, New York, N. Y.; on or about September 25, 1902 the trustee delivered Certificate No. 1070 and General bonds to the Bank of America; the Bank of America was a secured creditor of J. B. Skehan & Co. and obtained a court order confirming its right to sell its security conditioned upon its agreement to transfer any surplus to the receiver of J. B. Skehan & Co.; the debt of J. B. Skehan & Co. was paid in full and Bank of America had a surplus available for transfer to the receiver; accordingly, the Bank of America directed its nominee Frank C. Rhodes to endorse Certificate No. 1070 to Vanderpoel as receiver; Vanderpoel received the certificate but failed to effect a transfer and died in 1911 "without having accounted for his acts and proceedings as Receiver of the firm of J. B. Skehan & Co. and without leaving any trace of the records of the receivership estate or any unadministered assets remaining on hand. No trace of the aforesaid Certificate No. 1070 of Otis Elevator Company or other written evidence of the receivership's title to the 35 shares represented by said certificate can be found."

 At the trial Grenthal sought to establish the foregoing, but because of the long lapse of time he was unable to produce any one having first-hand information. His sole witness was Bernard Cowen, a New York attorney who had conducted an examination of such records as remained available. The Chancery Division found, and we think rightly, that his testimony fell far short of establishing the essential links to the chain of events asserted in the answer in support of Grenthal's claim of ownership. Thus, no evidence

whatever was produced to indicate that the Bank of America ever held Sprague or Otis shares in its J. B. Skehan & Co. collateral account, or that it liquidated and satisfied the account and transferred the Otis stock to the receiver as surplus. Indeed, the available receivership records disclose that shortly after the appointment of Vanderpoel as receiver for J. B. Skehan & Co. the Bank of America filed a verified petition for authority to sell the collateral in its J. B. Skehan & Co. account. The schedule of collateral attached to the petition listed various bonds and stocks but did not include any Sprague or Otis stock. Although not asserted in his answer, Grenthal's brief now suggests that the Sprague and Otis stock might be traced from Interior Conduit & Insulation Co. bonds which did appear on the schedule. The only supporting bits of evidence referred to are items said to have appeared in a newspaper called the *Chronicle,* which stated that a committee of Conduit stockholders had issued a circular recommending that the property of Interior be sold to Sprague, Conduit stock to be exchanged for Sprague stock and Conduit bonds to be redeemed in cash. We do not consider that this furnishes any evidential basis for Grenthal's suggestion that the Interior bonds listed in the schedule were exchanged for the Sprague stock which later produced the Otis stock; furthermore, we agree with the lower court's ruling that the newspaper was not admissible in evidence to establish the truth of its assertions. *Cf. Cowen v. Bloomberg,* 66 *N. J. L.* 385, 387 (*Sup. Ct.* 1901). We are not impressed with Grenthal's contention that in view of the circumstances and particularly the lapse of time, ordinary evidential restrictions ought to be relaxed; it seems to us that the difficulties of proof may largely be placed at the doorstep of the creditors represented by Grenthal who permitted over four decades to elapse before looking into their debtor's receivership which had been virtually terminated in 1908.

When the State of New Jersey instituted its action in 1949 the Rhodes stock had been unclaimed for 40 years and presumptively was abandoned and available for

appropriation for the common good of the citizens of the State. *State v. Standard Oil Co.*, 5 *N. J.* 281 (1950) affirmed 341 *U. S.* 428, 71 *S. Ct.* 822, 95 *L. Ed.* 1078 (1951). During the pendency of the proceeding and indeed for some time thereafter (*R. S.* 2:53–31), ownership of the stock could be claimed on behalf of Rhodes or an apparent stranger such as Grenthal. But the mere claim of ownership by such an apparent stranger in nowise established its validity. As in comparable litigation, he had the claimant's burden of clearly establishing by competent evidence that he was the rightful owner and presently had a valid claim as such. See *Maddock v. Connolly*, 82 *N. J. Eq.* 533, 534 (*Ch.* 1913) affirmed 82 *N. J. Eq.* 609 (*E. & A.* 1914); *Zuckermandel v. Zuckermandel*, 135 *N. J. Eq.* 598 (*Ch.* 1944). In the instant matter the lower court made the factual finding that Grenthal had not established his claim, and our review of the record has led us to the conclusion that its finding should not be disturbed. See *Rule* 1:2–20; *McGowan v. Peter Doelger Brewing Co.*, 10 *N. J. Super.* 276, 281 (*App. Div.* 1950).

On his appeal Grenthal relies primarily on the contention that the letter of October 20, 1909 from Rhodes to Otis was sufficient, without any additional proof, to establish a valid claim to the Rhodes stock in Vanderpoel as receiver and in Grenthal as his successor. The letter did not in terms purport to, and did not in fact, constitute a present assignment of the certificate. At best it was a single item of hearsay evidence admissible as a declaration against interest by Rhodes that several years earlier he had endorsed the stock and had delivered it to Vanderpoel. See 5 *Wigmore, Evidence* (*3d ed.* 1940), § 1455. In the light of all of the other circumstances presented it was insufficient to compel a factual finding by the trial court that Vanderpoel as receiver was entitled to and had actually obtained the stock as legal and beneficial owner but had wrongfully failed to account therefor to creditors of J. B. Skehan & Co. *Cf. Maddock v. Connolly, supra; Zuckermandel v. Zuckermandel, supra.* See *Beacom v. Robison*, 157 *Pa. Super.* 515, 43 *A. 2d* 640,

643 (1945), where the court applied the established rule that in the absence of proof to the contrary it would be presumed that a public official had not violated his duty; in the instant matter Vanderpoel, as receiver, would appear to be entitled to the benefits of a similar presumption.

Finally, Grenthal seeks to attack the judgment entered in the lower court on the ground that the "State has not proved the necessary jurisdictional and statutory conditions of the Escheat Act and the allegations of its alleged cause of action." In view of the lower court's finding, which we sustain, that Grenthal had not established any valid claim to the Rhodes stock, he is in no position to question the sufficiency of the State's proofs as against other defendants who have not appealed. *Cf. In re Atlantic City*, 3 *N. J. Super.* 62, 63 (*App. Div.* 1949). Furthermore, the pleadings of the State and Otis set forth the essential and undisputed jurisdictional facts bearing on the Rhodes stock within the requirements of *R. S.* 2:53–15 *et seq.*, and an appropriate stipulation of facts was entered between the State and Otis. At the trial the pleadings were admitted into evidence without objection by Grenthal, and the stipulation was likewise admitted, although counsel for Grenthal pointed out that he was not a party to the stipulation and was not bound thereby. The State then rested and Grenthal moved to dismiss the proceeding on the sole and clearly invalid ground that he had asserted a claim to the Rhodes stock, though then unproved. The motion was denied and the remainder of the trial was devoted entirely to Grenthal's attempt to prove the validity of his claim. No question was raised by Grenthal in the trial court with respect to the State's failure to introduce further evidence in support of its complaint and Grenthal may not raise that issue for the first time here. See *State v. Jones*, 4 *N. J.* 207, 214 (1950), *rearg. den.* 4 *N. J.* 374 (1950).

The judgment below is affirmed.

VANDERBILT, C. J., (dissenting). I am constrained to dissent because in my judgment the effect of the prevailing opinion is to deprive innocent creditors of J. B. Skehan & Co. of assets that are rightfully theirs.

Rhodes, in whose name the stock was registered on the books of the company, wrote the company the letter that is in evidence stating that he had endorsed the certificate for the shares of its stock and had delivered it to the receiver of J. B. Skehan & Co. Rhodes' letter is not only clear and unambiguous as to his endorsement of the certificate and its delivery to the receiver but also as to the termination of any claim thereto on his part: "The certificate for the shares * * * was endorsed by me and delivered to A. H. Vanderpool, Esq., as Receiver of J. B. Skehan & Co., * * * and I have no further interest therein." In the absence of any proof to the contrary it necessarily follows that the title to the stock passed to the receiver and that the stock is an asset of J. B. Skehan & Co. to be administered for the benefit of its creditors. As between a transferor and a transferee of a share of stock, the transferee obtains complete title to the stock even though the transfer is not recorded on the books of the corporation. *Fidelity Trust Company v. Newark Milk & Cream Company*, 89 N. J. Eq. 224 (E. & A. 1918).

True, the receiver never administered the stock and the receivership action was subsequently discharged on his motion. Equity, however, will not permit a trust to fail for want of a trustee, and here we now have a trustee in the substituted receiver of J. B. Skehan & Co. Having title to the stock, the receiver or his successor, the substituted receiver, may not abandon it without an order of the court directing him so to do: "A receiver is a mere custodian without power to abandon any claim or asset of the bankrupt," *Solomon v. Federal Trust Company*, 123 N. J. Eq. 265 (E. & A. 1938). There being no evidence in the case to indicate that the receiver transferred the stock to another, it must necessarily be presumed that the receiver and his successor

retained the title thereto. Since the substituted receiver has here made claim to the stock and established his ownership thereof, he is entitled to the stock under the provisions of the Escheat Act itself. *N. J. S. A.* 2:53–22 (now *N. J. S. 2A* :37–20).

The majority opinion approves the factual findings of the trial court that the substituted receiver had not established his claim, but like the trial court based its findings on the premise that the receiver's claim must be established by clear and convincing proof, citing in support *Maddock v. Connolly,* 82 *N. J. Eq.* 533 (*Ch.* 1913), and *Zuckermandel v. Zuckermandel,* 135 *N. J. Eq.* 598 (*Ch.* 1944). In my opinion, however, the burden placed upon the receiver is too great and the cases cited are not pertinent to the facts at hand. In both these cases the plaintiffs were seeking to establish claims against the defendants based on lost instruments, in the one instance a mortgage and in the other a written contract. In the instant case the stock certificate has apparently been lost, but there is no question as to the existence, extent or nature of the right of ownership of the stock of the defendant corporation which the lost certificate once evidenced. The sole question is whether the substituted receiver has established his ownership of the shares in the defendant corporation so as to defeat the State's right of escheat based on the presumption of abandonment arising out of the fact that the shares have remained unclaimed or the identity or whereabouts of their owner unknown for 14 consecutive years, *N. J. S. A.* 2:53–17 (now *N. J. S. 2A* :37–13) ; *State v. Standard Oil Co.,* 5 *N. J.* 281, 309 (1950). The resolution of this question of ownership does not depend on proof of the terms of a lost instrument. There is no reason, therefore, why the substituted receiver as a claimant to the shares sought to be escheated should be required to prove his claim by other than a preponderance of the evidence according to the rule applicable in civil cases generally, see *Jaeger v. Elizabethtown Consolidated Gas Co.,* 124 *N. J. L.* 420, 423 (*Sup. Ct.* 1940) ; 9 *Wigmore on Evidence* (3rd

*ed.* 1940), § 2498. In other jurisdictions in escheat proceedings the courts have required merely that a claimant establish his claim by a "fair preponderance of the proof," *Watterson v. Tremaine,* 24 *N. Y. S.* 2d 830 (*Sup. Ct.* 1941); *Morgan v. State,* 31 *A.* 2d 429 (*Sup. Ct. R. I.* 1943). Indeed, it would seem especially inappropriate to require a claimant to establish his claim by clear and convincing proof in cases such as this where the State is seeking to take onto itself by escheat property belonging to private persons. Escheat and forfeitures are not favored by the law and any doubts should be resolved against the State, 19 *Am. Jur., Escheat,* §§ 14, 41; 30 *C. J. S., Escheal,* § 2. Admittedly the substituted receiver's claim must rest upon the strength of his own title, but he should be required to establish his claim only by a preponderance of the evidence and not by clear and convincing proof.

I would reverse the judgment below.

Mr. Justice Heher and Mr. Justice Oliphant authorize me to say that they concur in this opinion.

*For affirmance*—Justices WACHENFELD, BURLING, JACOBS and BRENNAN—4.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER and OLIPHANT—3.