*11 Buch.* Borstelman *v.* Brohan.

EMMY BORSTELMAN et al.

*v.*

AMELIA BROHAN et al.

[Submitted April 15th, 1913. Decided May 6th, 1913.]

1. Whether a complainant seeks to establish a lost instrument such as a deed of conveyance or a will, or seeks to recover upon a lost instrument such as a mortgage or a promissory note, the burden is on him in the first instance to prove that a document of the sort alleged in the bill once existed, and that it was properly executed and delivered and so became a valid instrument as between the parties.

2. This rule manifestly casts the burden of proof on the party claiming under the lost instrument, and it is quite consonant with reason that the burden of proof should not only be sustained by him, but that the evidence as to the existence, execution and delivery of the lost instrument should be clear and cogent.

3. The rule, therefore, rests not only upon authority but upon reason. It would be outrageous to permit a defendant in possession under a valid paper title to be ousted by oral testimony concerning which there was any large element of doubt. If there is doubt about the existence at a previous time of the document which is claimed to have been lost, the inquiry ought to stop there. The prior existence of the document is a preliminary question which ought to be settled in the mind of the court in favor of its existence before testimony is considered as to the details of its contents.

4. In this suit in which the complainants are seeking to establish a lost deed under which they claim title, evidence examined and *held*, that the evidence does not show that any person ever saw a deed of the character and description required to make title in this suit.

---

On final hearing on bill, answer, replication and proofs.

*Mr. Spaulding Frazer* and *Mr. Louis Ziegler,* for the complainants.

*Mr. Gilbert Collins,* for the defendants.

HOWELL, V. C.

The bill alleges that Peter Brohan in his lifetime became the owner of three tracts of land in Hudson county which, on January 28th, 1878, he conveyed to Thomas F. Nugent, who, on the same day, conveyed the same to Henrietta ·E. C. Brohan, the wife of Peter Brohan, thus vesting the title thereto in the said· Henrietta, who is still living. On April 18th, 1885, the said Peter Brohan, by the name of Peter G. Brohan and Henrietta, his wife, conveyed the premises to one Friedrich Guldner, who held the title thereto until his death. Peter Brohan remained in possession of the premises until his death on June 5th, 1912.

Peter. Brohan left him surviving his widow, Henrietta E. C. Brohan, and the complainants, his heirs-at-law.

Friedrich Guldner subsequently died, the title to the said tract still remaining in him, and on June 5th, 1912, his heirs-at-law conveyed the premises in question to the defendants, who were the children of Mrs. Henrietta E. C. Brohan by her first marriage, and a few days later Henrietta E. C. Brohan released to the defendants any right that she might have in the premises.

The complainants, heirs-at-law of Peter Brohan, claim title to the lands in question upon the ground that at the time of the conveyance to Guldner a deed was executed by Guldner to Brohan which was never recorded and which is now lost, and that upon the death of Peter Brohan intestate the title devolved upon them; the prayer of the bill is that the defendants should hold the said lands in trust for the complainants, that they should convey the same to the complainants, and should account for mesne profits, and for general relief.

It is apparent that the complainants are seeking to establish a lost instrument under which they claim title as heirs-at-law of the grantor. The defence set up in the answer is that when the conveyance was made to Guldner it was agreed that Guldner should hold the title until the death either of Mr. or Mrs. Brohan, and then should convey the lands to the survivor or to such persons as the survivor might name; that the survivor was the widow, Henrietta E. C. Brohan, and that she directed the title to be conveyed to the defendants, and at the same time released

to them whatever right she had therein, and that they were then placed in possession of the land itself and that they hold the same under a proper and valid paper title.

Whether a complainant seeks to establish a lost instrument, such as a deed of conveyance, or a will, or seeks to recover upon a lost instrument, such as a mortgage or a promissory note, the burden is on him in the first instance to prove that a document of the sort alleged in the bill once existed, and that it was properly executed and delivered and so became a valid instrument as between the parties. This rule manifestly casts the burden of proof on the party claiming under the lost instrument, and it is quite consonant with reason that the burden of proof should not only be sustained by him, but that the evidence as to the existence, execution and delivery of the lost instrument should be clear and cogent. *Swaine* v. *Maryott, 28 N. J. Eq. (1 Stew.) 589.* The authorities on the point in this state are very meagre, but it has received attention from the courts of other jurisdictions, to the opinions of some of which I shall now refer. In *Connar* v. *Pushar, 86 Me. 300*, the court dealt with the question. The action was for the recovery of a tract of land. The defence was the existence of a deed which had been lost; the trial judge instructed the jury as follows: "When parties seek to supply the place of a lost deed in view, as I say, of the importance of having a degree of certainty and stability in titles to real estate, the evidence to satisfy you that there has been a deed, and that it has been lost, should be clear and convincing, and as to the character of the instrument, it should be clear and convincing. There should be evidence, in other words, that should give you a clear preponderance in favor of the proposition that there has been a deed, and that it has been lost; and the contents of that deed should be given with that degree of satisfaction that you feel that there must have been a conveyance of real estate. I do not mean to say, of course, that there is any different burden of proof on this proposition than in any other case of civil investigations. It is a preponderance of all the evidence in the case. But the evidence, I should say, should be clear and satisfactory within the limits of the preponderance of evidence." This in-

struction was upheld by the court of last resort in an opinion from which I quote: "The plaintiffs had an unbroken record title extending back over half a century; and the presumption in favor of record titles is so strong that it requires strong, clear and convincing proof to overcome it. This requirement does not militate against the rule that in civil suits a preponderance of evidence is all that is necessary. When an attempt is made to batter down recorded deeds by oral evidence of non-existing and unrecorded deeds, the oral evidence must be clear and strong, satisfactory and convincing, or it will not preponderate. It must be plenary." Citing *Moses* v. *Morse, 74 Me. 472.* A similar ruling was made in *Day* v. *Philbrook, 89 Me. 462.*

The court of appeals in New York, in *Edwards* v. *Noyes, 65 N. Y. 125,* said: "Parol evidence to establish the contents of a lost deed should be clear and certain; it should show that the deed was properly executed, with the formalities required by law, and should show all the contents of the deed, not literally, but substantially. If anything less than these requirements would suffice, evil practices, which it was the object of the statute of frauds to prevent, would be encouraged." In that case the plaintiff had no copy of the deed, but attempted to prove its contents by witnesses who had never read it, but who claimed that they had heard it read many years before the trial. They could give but a small fraction of what the deed appeared to contain.

In *Scurry* v. *Seattle, 56 Wash. 1,* the following declaration was made on this subject: "To prove the contents of the lost instrument, there was only one witness, the husband of one of the appellants, and his memory of the language in which the agreement was stated—although he testified that he prepared it himself—was so indistinct as to scarcely rise to the dignity of proof. While he stated with clearness his understanding of the legal effect of the instrument, he did not relate even the substance of the contents of the writing itself. In order to establish a lost instrument on behalf of the party asserting rights under it, the case must be clear and positive, and of such a character as to leave no reasonable doubt as to terms and conditions of the instrument. It is not enough that it be established that an in-

strument containing some form of limitation at some time existed, nor is it enough that some witness is able to state his understanding of the legal effect of the instrument; the contents of the instrument must be substantially proven, and with such clearness that the court can determine its legal effect from the language used therein." Citing *Tayloe* v. *Riggs, 1 Pet. 591; 7 L. Ed. 275,* and *Nicholson* v. *Tarpey, 89 Cal. 617,* and *United States* v. *Britton, Fed. Cas. No. 14650; Rankin* v. *Crow, 19 Ill. 626.* The case of *Tayloe* v. *Riggs, supra,* was a case in which there was an attempt to recover upon a lost instrument. Chief-Justice Marshall applied the doctrine now contended for in the following words: "When a written contract is to be proved, not by itself but by parol testimony, no vague, uncertain recollection concerning its stipulations ought to supply the place of the written instrument itself. The substance of the agreement ought to be proven satisfactorily, and if that cannot be done, the party is in the condition of every other suitor in court who makes a claim that he cannot support. When parties reduce their contract to writing the obligations and rights of which are described and limited by the instrument itself, the safety which is expected from them will be much impaired if they could be established upon uncertain and vague impressions made by conversation antecedent to the reduction of the agreement."

The rule, therefore, rests not only upon authority but upon reason. It would be outrageous to permit a defendant in possession under a valid paper title to be ousted by oral testimony concerning which there was any large element of doubt. If there is doubt about the existence at a previous time, of the document which is claimed to have been lost, the inquiry ought to stop there. The prior existence of the document is a preliminary question which ought to be settled in the mind of the court in favor of its existence before testimony is considered as to the details of its contents.

The evidence does not show that any person ever saw a deed of the character and description required to make title in this case. The principal witness is a Mrs. Livorani, who attempted to prove that there was such a deed seen by her in Brohan's tin

box, in which he kept his valuable papers, just before his death. The deed which she describes does not fit into the situation at all. She says that she remembers seeing in the tin box a certain deed by which Mr. Brohan sold his property to a certain Minnie and Friedrich Guldner in 1885, and then that she had seen a deed ·by which Minnie and Friedrich Guldner sold the property back to Peter Brohan. There was no Minnie Guldner, nor is it claimed by any one in the case that there was any grantee except Friedrich Guldner. Nor does she state the contents of the supposed deed in such detail as to identify it. The testimony of this woman is so extraordinary that I am constrained to say that I cannot believe it. She claims to have read all the deeds that were in the tin box, although she remembers the contents of none of them except the one to Minnie and Friedrich Guldner. She was in search of a deed for a cemetery lot belonging to Brohan, and for nothing else, and why she should open every paper that was contained in the box and read it is totally unexplained. Her husband, called also as a witness, stated that he had seen a deed from Peter (meaning Peter Brohan) to Gulden (meaning Guldner) and from Gulden to Peter, but he had forgotten the contents and was unable to tell what they were. I do not think that the complainants have even made out a *prima facie* case, and when the degree of proof which is required in a case of this sort is considered, it must be quite apparent that there is no evidence upon which the court can rely to establish the fact that there ever existed a deed of the kind claimed by the bill of complaint.

This conclusion makes it unnecessary to examine the defence at any length. I have, however, examined it carefully, and must say this about it: If the testimony on both sides is credible, the whole matter rests in such doubt as to prevent the complainants from having a recovery.