This suit is brought by Farber Bros. Supply Co., a corporation, and Theodore Farber, and seeks decree that the complainants have an equitable right to the perpetual free and uninterrupted use of a railroad siding leading from the main line of the Pennsylvania Railroad in the City of Linden to property, the title to which now stands in the name of the corporate complainant.
Harold Depew in the year 1920 conceived the idea of developing in the City of Linden between Stiles Street and the Rahway City line lands for factory sites and industrial purposes. Interested with him in the project was Charles H. Frost, who together with Depew owned a one-half interest in the land. A map was prepared by engineers on which proposed railroad sidings and various streets and plots are shown.
Theodore Farber was engaged in the lumber and building supply business in the City of Linden, and a railroad siding was to him important. He purchased a portion of said land as shown on said map and received a deed from Depew and Frost on June 1st, 1923, conveying 3.444 acres of land described by metes and bounds, in which description the map is referred as "Plan of Factory Sites situated in Linden. N.J." Simultaneously with the execution and delivery of the deed, Farber executed two purchase-money mortgages of $5,500 each, one to Depew and the other to Frost.
Upon the execution and delivery of the deed to Farber an agreement in writing with reference to the right of Farber *Page 185 
with respect to a railroad siding was also to be delivered. The original of this agreement, it is claimed, is lost and cannot be located. Depew retained all the papers for recording and Farber says he never received the deed or the agreement. A certified copy of the deed is in evidence. A typewritten copy of an agreement was produced on which the signatures in typewriting of Charles H. Frost, Harold Depew, Theodore Farber and Frank R. Anderson, a witness, appear. This agreement recites the delivery of the deed and a description of the property and refers to an agreement executed between Depew and the Pennsylvania Railroad Company, dated September 1st, 1922, under the terms of which Depew is to erect a railroad track or siding on his land as shown on the map hereinbefore referred to, and "that the party of the second part [Farber] is to have advantage of all the rights that the parties of the first part may have in the agreement with the Pennsylvania Railroad mentioned above, in connection with the maintenance of the track mentioned in said agreement, and the parties of the first part [Depew] do hereby agree to permit the said party of the second part to enforce the performance of the terms of the said agreement, by the party of the second part against the said Pennsylvania Railroad, in the name of the parties of the first part, but at the expense of the party of the second part." It provides that Farber shall erect and construct a railroad siding on the land conveyed to him and connect the same with the railroad track or siding to be constructed by the parties of the first part in accordance with the agreement. It further provides that Depew by his agreement with the Pennsylvania Railroad Company is allowed the sum of $2.50 per car for each car delivered over said track which Depew agrees to rebate to Farber for all cars delivered over said track for the use of Farber "or any company or firm with which he may be connected * * * as partner, officer, or director." The rebate, it is provided, is to continue for a period of five years from the date of the agreement between Depew and the Pennsylvania Railroad Company.
Depew conveyed his interest in the remaining property by various conveyances and title is now vested in the defendant *Page 186 
Richfield Realty Corporation, a corporation of the State of Delaware. Charles H. Frost died leaving a last will and testament, and appointed The Plainfield Trust Company, and his daughters, Marion Louise Willard and Frances Dorothy Dodds, as his executors and trustees.
Depew and Frost in their respective lifetimes had knowledge of the construction of the railroad siding by complainants upon their land, and its use in connection with the main line of the Pennsylvania Railroad.
On May 12th, 1943, complainants received from The Plainfield Trust Company, as executor and trustee under the will of Frost, the following letter: "It has been called to our attention that you are trespassing on our land running along the rear of your lumber yard by using our railroad siding to gain access to the tracks in your lumber yard. This must be discontinued immediately as a fence is about to be erected by the government to protect its property now being stored on our land. Will you kindly communicate with us regarding this matter without delay." It was not until the receipt of this letter that Farber searched his files for his agreement and found that he had never received the recorded deed or the original agreement, but located the typewritten copy before mentioned.
Frank R. Anderson, now seventy-four years of age and who knew Depew from childhood, was associated with him for about twenty-five years. Depew, a lawyer, was also engaged in the business of buying and selling real estate. Anderson recalls the purchase of the tract in Linden shown on the map referred to. He says he was often a witness to papers drawn by Depew, but could not identify the typewritten copy of the agreement between Depew and Farber with respect to the railroad siding except to say that from the general appearance of the agreement, it appeared to him that it was typewritten in their office. When Depew died there were a great number of papers in his safe and after his death he went to the office and took some of the papers "that belonged to people that I knew in the building and loan, that is, deeds, c., and put them with their papers in our building and loan, of which I am secretary." He had a general recollection of *Page 187 
the sale of the property to Farber and said "I know that he [Farber] was to build that connecting link there. I know that to be a fact." "You say `he was to build a connecting link.' To whom do you refer? A. Mr. Depew and Mr. Frost, both, that is, a combination of the partnership."
John Fedor, a realtor, in business in Linden for upwards of twenty-five years, deeded a large tract of land in Linden to Depew and Frost in 1921 of which the property now owned by complainant Farber Bros. Supply Co., was a part. He says it was the idea of Frost and Depew to develop the land as an industrial site and that he had a map prepared by Jacob L. Bauer, a civil engineer, before he sold the property to Depew and Frost, and that later another map was made upon which the railroad siding was shown. This latter map is in evidence and Fedor referring thereto says that he was instructed to use it by Depew "if I have any buyers in the future that I could sell accordingly."
The sale of the property to Farber was negotiated through Jacob Bass. It took between four and six months before the deal was finally consummated on June 1st, 1923, and Bass says that he was present at the closing of the title. His testimony with reference to the siding and right-of-way to the railroad tracks of the Pennsylvania Railroad in part is as follows:
"Q. What was being sold to Mr. Farber? A. About three and a half acres, approximately, and the whole thing was to get the railroad facilities arranged for. Q. I show you Exhibit C-6.
Did you have a map similar to this at the time? A. Yes, there was quite a stack of maps. Q. Now, what was the understanding in reference to Mr. Farber getting a right of way to the railroad track? A. Well, the whole thing was that he was to have the railroad track or he wouldn't have any use for the land. — He had a lumber yard about a mile down the street. Q. Now, do you recall whether there was any formal agreement given to Mr. Farber? A. Yes. Q. How do you recall that? A. Well, you see, they had first agreed on the terms of the agreement, and there was a little dispute between Depew and Frost and Farber about the rebate from the railroad, I believe, $2 a carload, that had come back *Page 188 
as the cars came in, and that the original agreement, as I remember it, between Depew and the railroad, Depew was getting those two-dollar bills and, when Farber came in the picture, he insisted he wanted to get his because he had to extend the siding that Frost and Depew were going to build, to his own land, and that was to compensate him for the cost of his siding. Q. Now, Mr. Farber has produced here Exhibit C-9, which is a copy unsigned. Do you ever recall seeing an original similar to this? A. Yes, at the time of the closing, there was an agreement of all the terms of the railroad and the others, signed by all the three individuals. Q. Did you see Frost sign it? A. I didn't see him sign it but I seen his signature there. Q. And the paper which had Mr. Frost's signature on, was that signed ____ A. That was signed by Mr. Farber." Bass says after the deal was closed, quite a little time elapsed before the railroad siding was extended to Farber's property, and that he had to see Depew several times and that he also went to see Mr. Frost. "Q. What did you say to Frost? A. Well, I just insisted that they do something about it. After all, I was the broker and negotiated the sale, and the whole thing was that they wanted to get railroad facilities. He [Farber] didn't need the land at four thousand an acre without facilities. They were not giving him the facilities and he wanted to build his new yard. Q. What did Mr. Frost say? A. Well, Mr. Frost — I can't say word for word, but the general thing was he said `We agreed to do it and we will do it in time for him to have it.' Q. Was it done? A. Ultimately it was done."
The map made by Jacob L. Bauer, civil engineer, in evidence bears date August 30th, 1921, and is entitled "Plan showing Factory Sites situated at Linden, Union Co., N.J." It shows railroad sidings running from the main line of the Pennsylvania Railroad. Another map in evidence is entitled "Plan showing Factory Sites and Lots situated at Linden and Rahway, Union Co., N.J., made by Busch Price surveyors Rahway, N.J., from surveys and maps by Jacob L. Bauer and Busch Price." This also shows the sidings running from the main line of the Pennsylvania Railroad Company through the property. This latter map is referred *Page 189 
to in two releases of mortgage in evidence, one from Yale University to whom Depew assigned his mortgage for $5,500 from Farber, and the other from The Plainfield Trust Company et al., to Farber for the $5,500 mortgage held by Frost in his lifetime.
Also in evidence is an agreement between Yale University and the Arny Steel Construction Company, dated December 17th, 1926, granting to this corporation the right to construct a siding as shown on map entitled "Plan Showing Factory Sites and Lots, situated at Linden and Rahway, Union Co., N.J.," "* * * provided the same be so constructed and used so as not to interfere with the right of others heretofore granted or that may hereafter be granted by the parties of the first part to others, said grantors expressly reserving the right to grant the same or additional rights to others as it shall see fit * * * subject to the restrictions, requirements and obligations of the Railroad Company with whose tracks said siding shall be joined." This agreement recites two deeds theretofore executed running from Yale University of New Haven to Arny Steel Construction Company.
The agreement between the Pennsylvania Railroad Company and Harold Depew provides that the Pennsylvania Railroad Company may disconnect the side track whenever in its opinion, for reasons therein set forth and not material here, it decides so to do. It also provides that the agreement and its provisions shall "enure to the benefit of the heirs, executors, administrators, successors and assigns of the Industry and the successors and assigns of the Railroad Company."
The jurisdiction of equity to establish lost documents is well settled. The burden of proof going to establish the execution of the agreement in question is upon complainants. Maryott v.Swaine, 28 N.J. Eq. 589. The evidence must be clear and convincing. Maddock v. Connolly, 82 N.J. Eq. 533;91 Atl. Rep. 735; affirmed, 82 N.J. Eq. 609; 90 Atl. Rep. 314; Borstelman v.Brohan, 81 N.J. Eq. 401; 87 Atl. Rep. 145.
The evidence, both oral and documentary, leaves no doubt that when the complainant Farber purchased the property *Page 190 
from Depew and Frost he did so in order to provide for his business a railroad siding connecting with the main line of the Pennsylvania Railroad, and that simultaneously with the deed for the property and bearing even date therewith, Depew and Frost delivered to Farber the agreement in writing, a copy of which is in evidence. Bass, who negotiated the sale, saw the original agreement with the signatures thereon at the time the title was closed. He says Farber would not have purchased the property except for the advantage of the railroad siding. This witness also recalled some of the matters which the agreement was to provide, and the copy of the agreement in evidence shows that his memory with respect thereto was not faulty.
Moreover, the right of Farber to the railroad siding as it extends from the main line of the Pennsylvania Railroad to his property does not seem to be wholly in dispute on the part of the executors and trustees of the Frost estate, since in a lease from the executors and trustees to the General Drum Storage Company for premises adjoining Farber's property, it is provided that the lease is made "subject to the right, if any, of Theodore Farber to use the railroad siding connecting with the tracks on his premises."
General Drum Storage Company, a partnership consisting of Clifford J. Colville, Madeleine E. Colville, Albert R. Colville, Donald H. Colville, Wilbur E. Colville, John J. Evans and William G. Cleland, defendants herein, became tenants of The Plainfield Trust Company and Richfield Realty Corporation of lands containing 36.412 acres by lease dated March 1st, 1943. The lease and the option therein contained to purchase the land is made subject "to the right, if any, of Theodore Farber to use the railroad siding connecting with the tracks on his premises." These defendants admit that they caused barriers to be erected across the track or siding leading to Farber's property. And while they filed what is designated by them as a disclaimer in which they renounced legal and equitable claim to any rights in the matters in question in this suit, they nevertheless answer and say that their business is the storage of steel drums to be used by the United States Army Air Corps for the shipment of aviation *Page 191 
gasoline to the armed forces; that in order to protect such drums from vandalism the government required that a fence be erected around the entire tract with gates and a watchman; that the complainants well knew of the purpose of said fence and gates, and consented to their erection for the war period, with the understanding and agreement that the Railroad Company would always be accorded access to and from the premises of the defendant through the said gates with its cars and equipment and such access has regularly been accorded to the complainants. But the testimony is otherwise, and clearly establishes the fact to be that this invasion of complainants' rights by these defendants was not acceded to and that the obstruction thus placed over the tracks and siding leading to Farber's property was twice removed by complainants.
It is concluded that the deed to Farber and the agreement, vest a right of user of the railroad siding in the complainants so long as the siding continues to exist, and that the interference by the defendants with the enjoyment thereof, entitles complainants to injunctive relief. Hedden v. Bierman-EverettFoundry Co., 90 N.J. Eq. 227; 106 Atl. Rep. 812.