**TOWNSHIP OF HADDON, Plaintiff,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, f/n/a or a/k/a, American and Foreign Insurance Company, et al., Defendants.**

Civil Action No. 95–CV–701 (JEI).

United States District Court,
D. New Jersey.

June 19, 1996.

David K. Cuneo, Haddonfield, New Jersey, for Plaintiff.

Marybeth Smith Werb, Christie, Pabarue, Mortensen, and Young, Cherry Hill, New Jersey, for Royal Insurance Company of America f/n/a or a/n/a American and Foreign Insurance Company.

Martha N. Donovan, Norris, McLaughlin & Marcus, Somerville, New Jersey, for General Accident Insurance Company.

## OPINION

IRENAS, District Judge:

The Township of Haddon ("Plaintiff") brought suit against Royal Insurance Company of America ("Royal"), General Accident Insurance Company ("GAI"), and Merchants Mutual Insurance Company ("Merchants") for specific enforcement of insurance policies, or in the alternative, for bad faith breach of contract. Defendant Royal denies the existence of the insurance policies which Plaintiff contends Royal issued to it covering the period from 1970 until 1976.

Plaintiff demanded a jury trial on all issues. The Court will bifurcate the cause of action and consider the existence and terms of the allegedly lost insurance policies issued by Royal separately from the remainder of the case.[1] The Court recognizes Plaintiff's right to a jury trial on whether the terms of a particular policy provide it with coverage. We find, however, that the Seventh Amendment does not guarantee Plaintiff the right to a trial by jury as to issues relating to the existence and terms of insurance policies alleged to have been lost by Plaintiff.[2] Therefore we strike Plaintiff's demand for a jury trial on those issues.

## I. BACKGROUND

In January of 1993, the Township of Haddon was impleaded by the Township of Voorhees as a defendant in *Incollingo v. RCA Corporation*, Docket No. 87–4263 (JHR), a civil suit involving liability for clean-up costs incurred in connection with the Buzby Landfill located in Voorhees, New Jersey. At that time, Voorhees Township alleged that Plaintiff was liable for some portion of the costs associated with the clean-up by virtue of Plaintiff's disposal of municipal waste and sludge at Buzby Landfill from 1972 through 1978.

About a year later, *Incollingo* was consolidated with other suits involving Buzby Landfill. RCA/General Electric, the named defendant in the *Incollingo* action and a defendant in the consolidated action, impleaded Plaintiff into the consolidated action, maintaining that Plaintiff is responsible for a portion of the costs associated with the Buzby Landfill cleanup.

Plaintiff then sought to have Royal, GAI, and Merchants defend and indemnify it in the consolidated suit pursuant to insurance policies under which Plaintiff believed it was covered against such claims. Royal refused Plaintiff's request, contending that it could not locate the policies under which Plaintiff claimed to be insured. Plaintiff was also unable to produce copies of the policies. As a result, Royal refused to either defend or indemnify Plaintiff, and argued that no such policy exists.

On February 1, 1996, Plaintiff filed this diversity action seeking a declaratory judgment against Royal, a North Carolina corporation. Plaintiff seeks specific performance of the insurance policy as well as compensatory and punitive damages arising from Royal's alleged bad faith breach of contract. On March 1, 1996, Plaintiff filed an amended complaint adding Merchants, a New York corporation, and GAI, a Pennsylvania corporation, as defendants. Plaintiff claims that Merchants issued it various relevant insur-

---

1. The Court notes that it is only bifurcating the question of the existence and terms of the two lost Royal insurance policies under which Plaintiff alleges it was covered from 1970 until 1976. Following resolution of these issues, the question of all the Defendants' liability, if any, to the Plaintiff, as well as all of Plaintiff's other claims, will be tried to a jury.

2. While the Defendants claim that this case is one of first impression, Plaintiff cites *UNR Indus., Inc. v. Continental Ins. Co.*, 682 F.Supp. 1434 (N.D.Ill.1988), as precedent for the proposition that the Court should grant a jury trial on the lost insurance policy issue. The Court notes that while the court in *UNR* tried the issue of two lost insurance policies to a jury, it indicated its uncertainty as to that decision in a footnote. *UNR*, 682 F.Supp. at 1439 n. 5.

ance policies between June 8, 1976, and June 8, 1983, and that GAI issued it relevant policies between January 8, 1983, and January 8, 1988. In its amended complaint, Plaintiff demands that each of the defendants defend and indemnify it against any and all claims in the underlying action. The Court has jurisdiction over the complaint pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $50,000.

By order dated April 4, 1996, the Court gave the Defendants the opportunity to file a memorandum of law addressing Plaintiff's right to a jury trial on its claim under Royal's lost insurance policies. Defendants Royal and GAI filed such briefs on May 6, 1996. By order dated May 9, 1996, Plaintiff was permitted to file a responsive brief on the issue, and it did so on May 29, 1996.

## II. DISCUSSION

### A. Bifurcation of the Issues

■ After reviewing the amended complaint, the Court finds that, given the nature of Plaintiff's cause of action, judicial economy counsels trying the issue of the lost Royal insurance policies separate and apart from the remainder of Plaintiff's claim. Consequently, the Court will bifurcate Plaintiff's cause of action as provided for in the Federal Rules of Civil Procedure. Under Fed. R.Civ.P. 42 a court may order a separate trial of any claim when doing so would be "in furtherance of convenience" or "conducive to expedition and economy." Once the existence of an insurance policy issued by Royal is determined, the possibility of all other claims being settled without litigation will be greatly enhanced. Moreover, bifurcation of Plaintiff's cause of action will enable the Court to avoid the complications associated with trying a case which includes both legal and equitable issues to a jury. For these reasons, the Court will bifurcate Plaintiff's cause of action and consider separately the issues of the existence and terms of lost insurance policies.

### B. The Right to a Jury Trial on the Issue of a Lost Insurance Policy

■ As a threshold matter, where a cause of action in federal court is founded on diversity jurisdiction, the determination of the right to a jury trial is based upon federal, not state, law. *Simler v. Conner,* 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963). Under federal law, the right to a jury trial derives from the Seventh Amendment of the Constitution which provides, "where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. CONST. amend. VII.; *see also* FED.R.CIV. P. 38. The Seventh Amendment did not create any new jury trial right, but rather preserved those rights which previously existed at common law in 1791 when it was ratified by the states. 9 CHARLES A. WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 2302 at 17 (1995).

■■ At common law, the right to a trial by jury was only guaranteed in suits brought in law. 9 *Id.* § 2301. Actions in equity were tried before a Chancellor, and were not afforded the right of a jury trial. 9 *Id.* Since the Seventh Amendment merely preserved preexisting rights, it does not guarantee individuals the right to a jury trial where the cause of action would have been heard in a court of equity. 9 *Id.* Thus, the critical question in determining the right to a jury trial becomes whether, at common law, a particular issue would have been tried in a court of law or a court of equity. *Ross v. Bernhard,* 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970).

Where it is unclear whether a particular issue is legal or equitable in nature and Congress has not indicated a statutory preference, federal courts have been left with the task of trying to classify the claim. In making this determination, the Supreme Court has employed two tests. FLEMING JAMES, JR., GEOFFREY C. HAZARD, JR. & JOHN LEUBSDORF, CIVIL PROCEDURE § 8.7 (4th ed.1992). The first is the remedial test, and the second is the historical test. *Id.*

#### 1. *Remedial Test*

■ Under the remedial test, a court merely looks at the remedy sought. *See Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339,

108 L.Ed.2d 519 (1990). Where the remedy sought is damages, courts may rightly conclude that the relief is legal in nature. 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES § 1.2 (2d ed.1993). Conversely, where a party is seeking an injunction, restitution, or specific performance, the remedy is ordinarily equitable. 1 *Id.* § 1.2, *see also Rash v. Peoples Deposit Bank & Trust Co.,* 192 F.2d 470 (6th Cir. 1951) (holding that a plaintiff seeking specific performance of a lost contract was not entitled to a jury trial because the remedy sought was clearly equitable). This test often provides the most straightforward guide to determining whether a claim is legal or equitable in nature. JAMES, HAZARD & LEUBSDORF, *supra,* at § 8.7. Occasionally, however, it is difficult to classify the nature of the remedy sought by a party.

■■■ Declaratory relief has posed just this problem for courts since its creation in the Federal Declaratory Judgment Act. 28 U.S.C. §§ 2201–02 (1948). Because declaratory relief did not exist at common law, it is neither *per se* legal nor equitable. 1 DOBBS, *supra,* § 2.6(3); *see, e.g., Owens–Illinois, Inc. v. Lake Shore Land Co., Inc.,* 610 F.2d 1185, 1189 (3d Cir.1979) (holding that declaratory relief is neither inherently legal nor equitable). Consequently, courts have had to evaluate whether a claim seeking declaratory relief is legal or equitable by analyzing the intent of the declaration. 1 *Id.* If the declaratory judgment sought would be remedial then it should be considered to be a legal remedy. *See, e.g., Chauffeurs,* 494 U.S. at 572–73, 110 S.Ct. at 1348–49 (1990) (holding that declaratory relief granting backpay resembled damages and was legal in nature). Conversely, where the declaratory judgment invokes the court's coercive powers in a manner analogous to a traditional equitable remedy, the declaratory judgment should be treated as equitable in nature. 1 DOBBS, *supra,* at § 2.6(3); *see, e.g., Giant Eagle, Inc. v. Federal Ins. Co.,* 884 F.Supp. 979, 984–85 (W.D.Pa.1995) (holding that a plaintiff seeking a declaratory judgment reforming a contract does not have a Seventh Amendment right to a jury trial).

In the case at hand, the remedial test does not provide a clear basis for determining whether the issue of the lost insurance policies is legal or equitable. Here, Plaintiff is seeking a declaratory judgment. As a result, the Court is confronted with the challenge of determining whether the nature of the remedy being sought is legal or equitable. This determination is muddied further by the nature of suits to enforce insurance contracts. On the one hand, Plaintiff is clearly seeking specific performance of the insurance contract, a traditionally equitable remedy. However, specific enforcement of a liability insurance policy may involve compelling the defendants to pay the plaintiff an amount of money equal to that expended by the insured because of the carrier's failure to provide a defense or pay an indemnity. In this respect, the remedy being sought resembles damages. Since the remedial test does not provide a clear basis for distinguishing whether the issue of the lost insurance policies is legal or equitable, the Court now turns to the historical test to resolve this issue.

### 2. *Historical Test*

■■■ Under the historical test, the court must look to 18th-century common law and determine whether the issue would have been tried by a court of law, or a court sitting in equity. *Tull v. United States,* 481 U.S. 412, 417–18, 107 S.Ct. 1831, 1835–36, 95 L.Ed.2d 365 (1987). *See also Markman v. Westview Instruments, Inc.,* — U.S. —, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (applying the historical test in a patent infringement case). Historically, actions brought to collect or enforce insurance policies have been treated in much the same way as other contract enforcement cases. OSTRAGER & NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 17.02 (8th ed.1995). Moreover, where an insurance policy is lost, the party seeking to recover under the lost insurance policy bears the same burden of proof as would a party seeking to recover under a lost contract or any other lost instrument. *Id.* Therefore, this court will look to common law treatment of lost instruments to determine whether Plaintiff's claim under the lost insurance policies is legal or equitable in nature.

At common law, most suits to enforce lost instruments were tried in equity. 1 JOSEPH

STORY, COMMENTARIES ON EQUITY JURISPRUDENCE ch. IV at 89. In courts of law, parties seeking relief based upon a written instrument were required to make *profert in curia*.[3] If the plaintiff could not produce the instrument, the declaration would be fatally defective. 1 STORY, *supra*, ch. IV at 89–90. The result was that relief could only be granted to the individual in a court of equity. *Id.* Consequently, at common law almost all actions to recover under lost instruments were heard in courts of equity. 1 *Id.*

In New Jersey, lost instrument cases were consistently heard in chancery courts prior to the merger of the courts in 1947. *See, e.g., Farber v. Plainfield Trust Co.,* 41 A.2d 26 (1945) (case involving lost deed was tried in a chancery court); *Wells v. Flitcraft,* 43 A. 659 (1899) (lost contract dispute tried in a chancery court). While federal, not state law, governs this issue, the well-established precedent in New Jersey of trying lost instrument cases in courts of equity reinforces the common law tradition affording courts of equity jurisdiction over these matters. Thus, the historical test which the Supreme Court laid out in *Tull* seems to provide a clear basis for determining that Plaintiff's claim as to the existence and terms of a lost insurance policy is an equitable issue. As a result, the Court does not interpret the Seventh Amendment as guaranteeing Plaintiff the right to have a jury determine the existence and terms of the lost insurance policies which Royal allegedly issued to the Plaintiff.

### III. CONCLUSION

Since the Seventh Amendment does not guarantee Plaintiff a right to have his claim under a lost insurance policy tried to a jury, the Court will strike Plaintiff's demand for a jury trial on that issue. Following the Court's resolution of these issues, the questions of Defendants' liability and all of Plaintiff's remaining claims will be tried in a jury trial.

---

**3.** In traditional common law practice, these words were inserted in a declaration as an allegation that the plaintiff was ready to produce, or did produce in court, the written instrument on which the suit was founded. BLACK'S LAW DICTIONARY 1089 (5th ed. 1979).